IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION

| | |
|---|---|
| **ONLINE MERCHANTS GUILD,** )<br>)<br>    **Plaintiff,** )<br>)<br>vs. )<br>)<br>**DANIEL CAMERON,** Attorney )<br>General of Kentucky, )<br>)<br>    **Defendant.** ) | No. _____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**Introductory Statement**

1. The Online Merchants Guild, the trade association for online merchants, brings this action for declaratory and injunctive relief in relation to the unconstitutional application of Kentucky's price-control laws, KRS 367.374 and KRS 367.170.

2. The Online Merchants Guild's members are making important goods available for purchase during the COVID-19 pandemic—for example, hand sanitizer, sanitizing wipes, and personal protective equipment ("PPE") like gloves and masks. Online sales, typically made through Amazon's store, are a key channel for collection and allocation of those critical-need items across the interstate marketplace. Items are offered nationwide; most sales are to residents of states other than Kentucky.

3. As a matter of state law, KRS 367.374 and KRS 367.170 allow the Kentucky Attorney General to impose price-controls during states of emergency such as the present one. And recently the AG has begun a well-publicized campaign against online merchants for

1

alleged price-gouging in connection with certain COVID-response goods.[1] Although the goal may be understandable, the effect is unlawful. Because of the nature of the national marketplace on Amazon, and Amazon's unique role in controlling search results and sales on its site, the Kentucky AG's efforts to impose Kentucky-specific price-controls is tantamount to national regulation of online merchants, who cannot engage in Kentucky-only business. The Kentucky AG's regulation of the interstate marketplace violates the dormant Commerce Clause.

4. The Online Merchants Guild therefore seeks a declaration that KRS 367.374 and KRS 367.170 are unconstitutional insofar as they are applied to regulate online merchants who offer items for sale in the national marketplace, using platforms like Amazon, but who lack the practical ability to control the price or sale of goods into Kentucky. The Court should enjoin such application of those statutes (and any other Commonwealth law the AG purports to use with similar effects on interstate commerce).

5. The AG will not be left without recourse. He may be able to achieve his goals by directly regulating Amazon—to which KRS 367.374 and KRS 367.170 apply—or by securing Amazon's voluntary efforts to combat unreasonable prices; Amazon has acted voluntarily during prior states of emergency.[2] And unlike the Online Merchant Guild's members, Amazon is capable of addressing Kentucky-specific concerns at minimal cost and consistent with constitutional requirements.

---

[1] We use the term "COVID-response goods" loosely, because it is ambiguous which goods the Kentucky AG (and other AGs) do or will contend are covered by price-gouging laws. Their definition may extend beyond PPE and the like to entertainment items that are in demand because people are spending more time at home, to canned soup, and so on.

[2] *See, e.g.*, Jennifer Calfas, *Amazon is Removing $100 Packs of Water After Being Accused of Hurricane Irma Price Gouging* (Sept. 7, 2017), https://money.com/amazon-bottled-water-price-gouging-hurricane-irma-florida/.

6. The Online Merchants Guild therefore seeks declaratory and injunctive relief as set forth below.

## Jurisdiction and Venue

7. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this case arises under the Constitution and laws of the United States, including the dormant Commerce Clause, the Due Process Clause, the First Amendment, 28 U.S.C. § 2201, and 42 U.S.C. § 1983. The Court has personal jurisdiction because the Online Merchants Guild submits to the jurisdiction of this Court for purposes of this action, and the Attorney General of Kentucky is a resident of this District.

8. Venue is proper in this Court's Frankfort Division because it is where the Attorney General of Kentucky maintains his headquarters and is the location from which the Attorney General has directed the conduct challenged herein. 28 U.S.C. § 1391(b)(2).

## Parties and Standing

9. Plaintiff the Online Merchants Guild is a trade association, which represents and advocates for online merchants. The Online Merchants Guild is a resident of Massachusetts. The Online Merchants Guild has organizational standing to bring this action on behalf of its members, who are or may be affected by the law challenged herein. The Online Merchant Guild's members would have standing in their own right because they may be subject to the challenged law, and have been or may be subject to subpoenas by Defendant the Attorney General of Kentucky purporting to investigate violations of KRS 367.374 and KRS 367.170. The interests the Online Merchant Guild seeks to represent are germane to the organization's purpose of advocating for the right of online merchants to participate in a free and fairly regulated online marketplace. The

claims asserted and relief requested do not require the participation of the Online Merchant Guild's members. The Online Merchants Guild also has standing in its own right, because the organization has been forced to divert its resources to address the impacts of the challenged law.

10. Defendant Daniel Cameron is the Attorney General of Kentucky and is the state officer designated to represent the State of Kentucky in constitutional challenges to the Commonwealth's laws. *See, e.g.*, KRS 418.075. Defendant is being sued in his official capacity. He has issued subpoenas under KRS 367.374. The AG is also soliciting price-gouging complaints through its website, which indicates that the AG intends to engage in further activity pursuant to that law.[3]

## Factual Allegations

## Market Conditions During the Pandemic

11. The world is facing a public health and economic crisis resulting from COVID-19. In response, the Governor of Kentucky declared a state of emergency on March 6 and extended that order related to price-gouging on March 20, 2020. Governors nationwide have issued broadly similar emergency declarations.

12. Beyond the loss of life, the pandemic is also having devastating effects on the economy, with business closures increasing and unemployment levels not seen since the Great Depression. Economists predict a severe recession despite government expenditure of trillions of dollars to support the private economy. The darkening economic outlook

---

[3] Kentucky Attorney General, Price Gouging Complaint Form, https://secure.kentucky.gov/formservices/AttorneyGeneral/PriceGougingComplaintForm (specifically referring to COVID-19 issues).

makes it all the more important for viable businesses to survive, and for government not to inflict needlessly destructive measures on the private economy.

13. For their safety, Americans are being encouraged to limit in-person shopping and to instead shop online where possible. Online shopping is lower risk for consumers than shopping in-person, because online shopping involves fewer uncontrolled exposures with individuals who may be infected with the novel coronavirus and surfaces that may carry the virus.

14. There is increased market demand for various items as a result of the pandemic, including hand sanitizer, sanitizing wipes, and PPE like gloves, masks, and gowns. Because Americans are spending more time at home, they are also increasing purchases of various home entertainment and food items, among others.

15. Public health conditions are not uniform across the United States. Certain states and regions have been hit harder than others. Similarly, marketplace conditions are not uniform across the United States. There is, for instance, greater demand for certain items in harder-hit locations than others.

16. Amazon is the dominant online retail store in the United States. Amazon also has a significant presence in the Commonwealth, including billions in physical capital and thousands of employees.[4] Members of the Online Merchants Guild conduct most of their business by listing products for sale in Amazon's retail store.

17. Various Online Merchants Guild members have, or intend to, offer in-demand items like hand sanitizer and PPE online, and specifically via Amazon's store. For example, an Online Merchants Guild member might acquire hand sanitizer in a state in the middle of

---

[4] *See, e.g.*, Amazon, Amazon's Expansion in Kentucky, https://blog.aboutamazon.com/transportation/amazons-expansion-in-kentucky.

the country with relatively few cases of coronavirus, and offer that product in the national marketplace using Amazon, where it might be purchased by a consumer in a state with higher demand for the product. To be economical, the offer price will need to be higher than the purchase price and other cost inputs (including Amazon's commission); the offer price may also reflect a demand premium. Such transactions respond to consumer demand dynamics. They lead to an efficient allocation of goods in the national marketplace, and generate price signals for manufacturers, which can lead to increased production of in-demand goods.

18. For example, in January, many Online Merchants Guild members acquired masks and hand sanitizer in states in the middle of the country at a time where there were no coronavirus cases in the state, and no indication of emergency from the state or federal government.  At a time when supply was short in states like California and New York, where the products were needed the most, members were able to reallocate supplies from the local marketplace to a national marketplace, via Amazon's retail store, so that these products would get to the front lines, in order to stop or slow the spread of the virus. There was no emergency order from the Governor of Kentucky. Considering that the best way to fight a pandemic is to stop or slow the spread, getting these products into the areas where they were needed the most was a matter of national importance.

19. To be economical, the offer price will need to be higher than the purchase price and other cost inputs (including Amazon's commission); the offer price may also reflect a demand premium. Such transactions respond to consumer demand dynamics. They lead to an efficient allocation of goods in the national marketplace, and generate price signals for manufacturers, which can lead to increased production of in-demand goods.

20. Various Online Merchants Guild members have developed significant expertise and networks of international manufacturing contacts that make them proficient at sourcing products that are in demand, including COVID-related items like hand sanitizer and masks that are in high demand. However, rather than putting their expertise to use to bring these high demand products to market, they refuse to act in fear of future civil or criminal ramifications, as the acquisition cost of these products has increased substantially from suppliers around the world, compared to their pre-COVID emergency price.  This chilling effect caused by much more than just hypothetical fear, that the sale of these products at higher prices will lead to a presumption of price-gouging, and a subsequent investigation by the AG's office, or any other state, is a substantial burden on interstate commerce, and is actually contributing to the shortages and higher prices that consumers are facing when seeking to acquire these goods. A law or enforcement regime that has the effect of deterring procurement of high demand products for sale in our nation's economy at a time when they are most needed, is not only unconstitutional, it is detrimental to the best interests of our nation.

21. Amazon has significant practical and legal control over the functioning of its eCommerce retail storefront (despite regularly minimizing its role as a store to minimize its legal exposure). Amazon is in privity of contract with consumers who use its site; the members of the Online Merchants Guild are not. Amazon controls the geography in which search results arise. Amazon has the right to reject merchants' proposed prices. Amazon also makes available features in its Application Protocol Interface, so that third-party applications can interact with Amazon's store, including applications that automatically adjust the price, in response to changing market conditions, which are determined by a

data feed via Amazon's API of prior retail sales of similar products in Amazon's store. Amazon also has the ability to block such applications in times of emergency. Amazon also has a "Match Lowest Price Button," which allows merchants to agree to offer products at whatever Amazon determines the lowest price to be.

22. Amazon's commissions—which average 15%—are baked into the prices that merchants offer. And although Amazon typically takes the position that it is not responsible for third-party sales in its store, the Supreme Court recently held that commissions and markups are "economically indistinguishable." *Apple Inc. v. Pepper*, --- U.S. ---, 139 S. Ct. 1523 (2019). In some cases, accounting for Amazon's commission margin could be the difference between what the AG considers a lawful and an unlawful price.

23. Amazon has the ability to remove listings that do not comply with its policies—a power it has been using. According to media reports, Amazon has "blocked or removed more than 1 million products from its third-party marketplace that made false claims about the coronavirus," and "suspended or took down tens of thousands of deals from sellers that it accused of charging customers unfair prices."[5]

24. By contrast, the Online Merchants Guild's members have no realistic flexibility in tailoring product sales by geography and by price, as set forth further below.

### The Kentucky AG's Price-Gouging Investigations

25. Kentucky, like other states, has a price-control law that, in general terms, prohibits certain price increases on covered goods during emergencies. KRS 367.364 prohibits the sale of certain "goods and services" during declared emergencies at prices that are "grossly in excess" of pre-emergency prices. The statute does not provide an intelligible

---

[5] Annie Palmer, *Amazon Cracks Down on Coronavirus Price-Gouging and Products Making False Claims* (Feb. 27, 2020), https://www.cnbc.com/2020/02/27/amazon-cracks-down-on-coronavirus-price-gouging-false-claims.html

standard by which one could prospectively determine whether a proposed sale does or does not violate the law. Nor is there prospective certainty about which goods or services are covered by the law.

26. KRS 367.364 carries significant exposure, especially for smaller businesses like the members of the Online Merchants Guild. Penalties can reach $25,000 per day under KRS 367.378.

27. KRS 367.170 is a similar price-control measure, which bars "unconscionable" prices and is not limited to emergencies. The Kentucky AG is apparently taking the position that KRS 367.170 applies even more broadly than KRS 367.364. So, for example, the AG appears to contend that an offer or sale could violate KRS 367.170 even if it were expressly excluded from violating KRS 367.364.

28. Those statutes are unlawfully vague because they do not provide fair notice of whether an offer or sale will violate the law.

29. Along with the expenses of responding to inquiries, exposure to Kentucky's price-control laws alone could impose significant and disruptive costs, to say nothing of the exposure to the laws of multiple states.

30. The Kentucky AG has begun a public campaign against alleged price-gouging, targeting sales on Amazon among other sales channels, with Amazon's cooperation. Some of those subpoenas have been sent to Online Merchants Guild members or similarly-situated online merchants.

31. Attorneys General from other states are also investigating online merchants in connection with the sale of goods like hand sanitizer, PPE, and similar items. AGs from other states

are also investigating online merchants in connection with the sale of other goods, not traditionally associated with COVID-19.

32. For example, the Kentucky AG's office has indicated to members that peanut butter "may" be subject to their enforcement efforts, but McCormick spices would not be. Other states have also broadened the scope of their investigation well beyond masks and hand sanitizer. One member indicated that a representative from the AG's office indicated that DVD's and video games may be subject to price-gouging laws, since citizens of the state are forced to spend more time at home.

33. Kentucky's price-gouging laws are inconsistent with the laws of some other states, so sales that could be lawful in one part of the national online marketplace might be subject to price-gouging allegations under Kentucky law. For example, Alabama's price-gouging statute sets a fixed definition of an unlawful price increase: a 25% or more increase over the average pre-emergency price. Ala. Code § 8-31-4. So a sale that might be lawful in Alabama—a 20% increase over the pre-emergency price—might be subject to challenge in Kentucky.

34. Further complicating the analysis, KRS 367.364's vague definition of an unlawful price increase and vague definition of covered goods make it impossible to determine prospectively whether such a sale would arguably violate the law. KRS 367.170 is even more indefinite and difficult to plan around.

**Effects on the Online Merchants Guild's Members and the Online Marketplace**

35. The result of efforts by the Kentucky AG (and others) is an increasingly complex patchwork of conflicting laws that are imposing a substantial burden on interstate

commerce and chilling business activity and distorting the market for COVID-response goods.

36. The Kentucky AG's threatened extraterritorial application of KRS 367.374 and KRS 367.170, combined with the same by other state Attorneys General, is increasingly disrupting online business and the business of the Online Merchants Guild's members in particular.

37. Online Merchants Guild members lack viable means of complying with Kentucky-specific price controls on Amazon, while continuing to participate in the national marketplace. Online Merchants Guild members whose goods are sold in Amazon's store cannot target or restrict the states in which their products appear for sale. Nor can they set the price that products appear for sale at in one state versus another. Simply put, an Online Merchant Guild member selling on Amazon cannot limit her sales to states other than Kentucky or offer Kentucky-only prices.

38. Online Merchants Guild members cannot simply watch for Kentucky sales and cancel them after the fact. Beyond the administrative burden that would impose on Online Merchants Guild members, Amazon has a policy and practice of canceling accounts if merchants repeatedly cancel sales. So canceling Kentucky sales may lead to the destruction of Online Merchants Guild members' businesses—not just as to Kentucky sales, but as to the nationwide marketplace.

39. Rather than engaging in commerce that could be lawful in 49 other states, and in other countries, Online Merchants Guild members have or will refrain from selling a variety of goods on Amazon for fear of inadvertently violating Kentucky law. That has caused harm

11

to the businesses of Online Merchants Guild members—just when the need for business survival is greatest.

40. The Kentucky AG's actual and threatened application of Kentucky-specific price-controls is having the extraterritorial effect of regulating the conduct of the Online Merchants Guild's members outside of Kentucky. Beyond influencing pricing decisions, the AG's conduct is deterring participation in the interstate marketplace. Merchants who have been able to source important goods are nonetheless wary of acquiring them and making them available for sale, for fear of becoming subject to investigation or prosecution. There is also an unlawful protectionist element to these investigations: the Kentucky AG (and other AGs) are trying to prevent products from leaving their respective states and being allocated to states with greater need or demand as determined by the market.

41. Some state price-gouging laws establish a presumption if the price charged is in excess of a certain percentage over the pre-emergency declaration price. Those laws are problematic in their own right, because prices *have* substantially increased, and this deters market participation as businesses are less likely to want to engage in the sale of any product that, by default, carries a presumption of guilt. However, KRS 367.170 and similar laws in other states are even more egregious, as the lack of specificity makes any act of selling goods a violation, leaving the merchants guessing as to what is lawful, and what is not, and is therefore a violation of the requirement of fair notice under the Due Process Clause.

42. The net effect is not only unconstitutional, but also worse for the national marketplace and society at large. To the extent that Online Merchants Guild members cannot source

and supply products for sale in Amazon's retail storefront, there will be fewer such goods available in the marketplace—an artificial supply restriction which may ultimately lead to increased prices overall.

43. The Kentucky AG's application of Kentucky-specific price-controls is burdening the commercial speech of the Online Merchants Guild's members by threatening prosecution over commercial speech about transactions that would be lawful in other states.

44. The Kentucky AG is also regulating the conduct of non-Kentucky residents who did not deliberately affiliate with Kentucky or seek the protection of its laws, which violates the Due Process Clause.

45. The Kentucky AG can likely effectuate his policy through non-extraterritorial and less burdensome means. It is possible for the AG to regulate Amazon directly to address price-gouging concerns. As the largest online retail store in the world, Amazon is not only in the best position, but it is the only party that can take into account the price-gouging laws of Kentucky, or any other state, on its store. Amazon is also directly subject to the laws at issue. Yet it does not appear that the AG has targeted Amazon the way it has targeted the small businesses that make up the Online Merchants Guild's members—even though Amazon's commissions are part of the price of third-party goods, and Amazon is often the first-party seller and is sometimes even the highest-listed—and best promoted—offer in its store.

46. Directly regulating Amazon is effective. For example, Florida's AG has reportedly "[w]orked with online platforms"—i.e., Amazon's Storefront—"to deactivate more than 160 posts offering items for outrageous prices."[6] Unlike Online Merchants Guild

---

[6] Office of the Florida Attorney General, News Release (April 21, 2020), http://www.myfloridalegal.com/newsrel.nsf/newsreleases/40AE70ECF3DFAAB385258551004EC265.

members, Amazon can restrict search results. Amazon also can refuse to consummate sales in Kentucky above a certain threshold. And Amazon can directly remove listings. So the Kentucky AG may further any legitimate interest in regulating prices in Kentucky by calibrated efforts involving Amazon. For example, Amazon could set the "Match Lowest Price" button to correspond with an acceptable price for the good in question, or could otherwise be required to be transparent about acceptable prices.

47. Accordingly, the Online Merchants Guild seeks the following relief for its members and itself.

## Causes of Action

### Count One – Violation of the Dormant Commerce Clause

48. The foregoing paragraphs are incorporated as if set forth herein.

49. The dormant Commerce Clause forbids extraterritorial application of a state's laws.

50. The Kentucky AG's actual or threatened application of KRS 367.364 and KRS 367.170 to Online Merchants Guild members for sales on Amazon constitutes extraterritorial application of Kentucky law. The Kentucky AG's application of KRS 367.364 and KRS 367.170 is therefore *per se* unconstitutional.

51. To the extent the Kentucky AG's application of KRS 367.364 and KRS 367.170 to Online Merchants Guild members is not extraterritorial, it still violates the dormant Commerce Clause under the *Pike v. Bruce Church* balancing test. The law has a significant burden on interstate commerce, and any local benefits could be achieved by a far less burdensome means, such as regulating Amazon to transparently impose acceptable prices. That would be consistent with how the Commonwealth taxes sales on Amazon—by directly regulating Amazon rather than myriad sellers from many other

jurisdictions. *See* KRS 139.550 (requiring "marketplaces" that "facilitate[]" online sales to remit taxes on those sales).

52. Moreover, the Kentucky AG is applying KRS 367.364 and KRS 367.170 to achieve the protectionist end of preventing goods from existing Kentucky for other destinations in the national marketplace.

53. The Kentucky AG's unconstitutional application of KRS 367.364 and KRS 367.170 has injured and will injure the Online Merchants Guild's members, and the Online Merchants Guild itself. Declaratory and injunctive relief are necessary to redress those injuries.

## Count Two – Violation of the Due Process Clause

54. The foregoing paragraphs are incorporated as if set forth herein.

55. The Due Process Clause forbids Kentucky from exercising personal jurisdiction over non-residents who do not deliberately affiliate with the Commonwealth and seek the protection of its laws.

56. The Kentucky AG's conduct described herein is threatening to apply KRS 367.364 and KRS 367.170 to non-Kentucky residents, who have not deliberately affiliated with the Commonwealth or sought the protection of its laws.

57. That violation of the Due Process clause has injured and will injure the Online Merchants Guild's members, and the Online Merchants Guild itself. Declaratory and injunctive relief are necessary to redress those injuries.

58. The Due Process Clause forbids states from applying impermissibly vague laws.

59. KRS 367.374 and KRS 367.170 are impermissibly vague. They fais to give citizens reasonable notice of unlawful prices or covered goods, among other things.

60. The Kentucky AG's application of KRS 367.374 and KRS 367.170 as set forth herein violates the Due Process clause has injured and will injure the Online Merchants Guild's members, and the Online Merchants Guild itself. Declaratory and injunctive relief are necessary to redress those injuries.

### Count Three – Violation of the First Amendment

61. The foregoing paragraphs are incorporated as if set forth herein.

62. The First Amendment forbids states from burdening lawful commercial speech.

63. The Kentucky AG's application of KRS 367.374 and KRS 367.170 has the effect of burdening commercial speech about transactions that would be lawful in other jurisdictions.

64. The Kentucky AG's unconstitutional application of KRS 367.364 and KRS 367.170 has injured and will injure the Online Merchants Guild's members, and the Online Merchants Guild itself. Declaratory and injunctive relief are necessary to redress those injuries.

### Prayer for Relief

65. The Online Merchants Guild respectfully requests, on behalf of itself and its members, the following relief:

    a. A declaration pursuant to 28 U.S.C. § 2201 that the Kentucky AG's application of KRS 367.364 and KRS 367.170, including investigations and threatened or actual prosecution under that law, is unconstitutional as applied to the Online Merchants Guild's members as set forth herein;

    b. An order and judgment enjoining the Kentucky AG from applying KRS 367.364 and KRS 367.170, including investigations and threatened or actual prosecution under that law, to the Online Merchants Guild's members as set forth herein;

    c. Costs and attorney's fees pursuant to 42 US.C. § 1988; and

    d. All other appropriate relief.

Respectfully submitted this 1st day of May, 2020.

                                   s/ Aaron K. Block
                                   Aaron K. Block
                                   The Block Firm, LLC
                                   Georgia Bar No. 508192*
                                   404-997-8419
                                   aaron@blockfirmllc.com
                                   Counsel for the Online Merchants Guild
                                   *Application for admission *pro hac vice* to be submitted

                                   s/ Paul S. Fafellson
                                   Paul S. Rafelson
                                   Rafelson Schick, PLLC
                                   Bar # 16958 (Florida)
                                   2255 Glades Rd
                                   Suite 319
                                   Boca Raton, FL 33431
                                   (561) 326-6529

                                   /s/ William G. Deatherage Jr.
                                   William G. Deatherage Jr.,
                                   Mark A. Gilbert,
                                   Deatherage, Myers & Lackey, PLLC
                                   701 South Main Street
                                   P.O. Box 1065
                                   Hopkinsville, Kentucky  42241-1065
                                   Telephone:   270-886-6800
                                   Facsimile:    270-885-7127
                                   Email:  mgilbert@dmlfirm.com