UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT FRANKFORT

*Electronically filed*

| | |
|---|---|
| ONLINE MERCHANTS GUILD,<br><br>　　*Plaintiff*<br><br>v.<br><br>DANIEL CAMERON, in his official capacity as ATTORNEY GENERAL OF KENTUCKY,<br><br>　　*Defendant* | Civil Action No. 3:20-cv-00029<br>Judge Gregory F. Van Tatenhove |

**ATTORNEY GENERAL'S SUPPLEMENTAL BRIEFING ON THE STATUS OF THE JONES & PANDA ACTION AND *YOUNGER* ABSTENSION**

　　Defendant, Commonwealth of Kentucky *ex rel.* Daniel Cameron, in his official capacity as Attorney General of Kentucky, submits this Supplemental Briefing in response to the Court's June 3, 2020 Order (DN 29).

## INTRODUCTION

　　To aid in its decision on the Online Merchants Guild's Motion for Preliminary Injunction, the Court requested supplemental briefing from the parties on: (i) the status of the Jones & Panda state court litigation, including any information related to the timeline for adjudication in that matter; (ii) their respective views as to the applicability of the *Younger* abstention doctrine to the present matter; and, (iii) any other pertinent information or argument related to the state court litigation and its impact on the present case.

　　As shown below, after becoming a member of the Online Merchants Guild (the "Guild"), Jones & Panda amended its pleadings in the Fayette Circuit Court to include the same constitutional

claims at issue before this Court. Put differently, the Fayette Circuit Court and this Court have before them identical challenges to Kentucky's Consumer Protection Act and the price gouging statutes set forth therein. Accordingly, and for the reason set forth below, Jones & Panda's lawsuit in the Fayette Circuit Court is a state proceeding that implicates important state interests, one that provides an adequate opportunity to raise the federal challenges set forth in the Guild's federal case. Abstention is thus appropriate under *Younger v. Harris*, 401 U.S. 37 (1971).

## ARGUMENT

### I. The Attorney General's position with regard to the status of the Jones & Panda state court litigation and the relevant timeline.

The Court's Order (DN 29) notes that Jones & Panda's state court Petition and the Attorney General's Response to the Petition and Emergency Motion to Enforce the CID are already in the record. Thus, the Attorney General simply provides here the timeline subsequent to those filings. Pursuant to a briefing schedule set by Judge VanMeter[1], on May 20, 2020, Jones & Panda filed a Response to the Attorney General's Emergency Motion to Enforce (Exhibit A). Along with the Response, Jones & Panda filed a Motion for Leave to File First Amended Petition (Exhibit B) adding constitutional claims that mirror the Guild's Complaint.

The Court heard arguments on May 22, 2020, and issued an Order on that date. *See* Exhibit C. The Court granted Jones & Panda's Motion for Leave to File First Amended Petition and denied the Attorney General's Motion to Enforce. While the Attorney General's Motion was denied, the Court advised the Attorney General that same Motion to Enforce could be brought at a later date, but that the Attorney General should provide more information to support the issuance of the CID. With

---

[1] Because of the unavailability of Chief Judge Kimberly Bunnell, the Emergency Motion to Enforce CID and Motion for Leave to File First Amended Petition were heard by Hon. Lucy A. VanMeter, Third Division, pursuant to Rule 2(c) of the Fayette Circuit Criminal and Civil Court. The constitutional law claims at issue will be decided by Chief Judge Kimberly Bunnell.

regard to the constitutional claims at issue, the Court noted:

> The Court declines to rule at this time on the constitutional questions raised by the parties. Whether the law regulates extraterritorial commerce has not been fully briefed. Petitioner has recently amended the Petition to assert additional grounds for review, pursuant to the First Amendment and equal protection clause, which have not been briefed. These matters may be dispositive of the case and are reserved for ruling by presiding Judge Bunnell upon the filing of an appropriate motion by either party.

Ex. C, at p. 5-6.

On June 1, 2020, the Attorney General filed a Response to Jones & Panda's First Amended Petition to Set Aside the CID. *See* Exhibit D. In conjunction with this Response, the Attorney General filed a Motion for In Camera Review of the information the Attorney General received from Amazon in making its determination to issue a CID. *See* Exhibit E.

Jones & Panda has not yet replied to the Response to the First Amended Petition or responded to the Motion for In Camera Review. Because of the Covid-19 pandemic and its effect on in court appearances, the petition and the motion are not yet set for a hearing date. The parties are to work together coordinate a hearing. After the briefing is complete, Judge Bunnell will be in a position to hold a hearing and rule upon the constitutional claims.

## II. The Attorney General's position as to the applicability of the *Younger* abstention doctrine

The Court lacks subject matter jurisdiction because the Guild does not have standing to bring its claims and because the claims are not ripe for adjudication. Should the Court find that subject matter jurisdiction exists, it should nevertheless abstain under the *Younger* abstention doctrine.

In *Younger v. Harris*, the Supreme Court created an abstention doctrine prohibiting federal courts from enjoining state court proceedings. 401 U.S. 37 (1971). In recent years, the Supreme Court has limited the *Younger* abstention to three circumstances: (1) ongoing state criminal prosecutions; (2) ongoing state-initiated civil enforcement proceedings "that are akin to criminal prosecutions;" and, (3) ongoing state civil proceedings that involve the ability of courts to perform judicial functions. *New*

*Orleans Public Service, Inc. (NOPSI) v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989). Without these "exceptional" circumstances, a pending state court action is not a bar to federal jurisdiction. *Id.* (citing *Colorado River Water Conservation Dist. V. United States*, 424 U.S. 800, 817 (1976).

Here, Jones & Panda's state court action arises from an ongoing civil proceeding, specifically the enforcement of Kentucky's price gouging statutes in the midst of a national and state emergency. This Court has indeed previously addressed this precise issue. In *Marathon Petroleum Co. LLC v. Stumbo*, 528 F.Supp.2d 639, 644–45 (E.D. Ky. 2007, the Court found *Younger* abstention applicable to a case challenging the constitutionality of Kentucky's price gouging statutes.

Once a circumstance exists in which *Younger* abstention is applicable, abstention becomes appropriate when (1) a state proceeding is currently pending; (2) the proceedings involve an important state interest; and, (3) the state proceedings will provide the federal plaintiff an adequate opportunity to raise its constitutional claims. *Doe v. Univ. of Ky.*, 860 F.3d 365, 369 (6th Cir. 2017) (citing *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

To analyze the "currently pending" requirement, the proper time of reference is the date on which the federal complaint was filed. *Zalman v. Armstrong*, 802 F.2d 199, 204 (6th Cir. 1986). Jones & Panda filed its state court Petition to Set Aside the CID on April 14, 2020. (DN 22-1.) The Guild filed its federal complaint on May 1, 2020. The Guild may note that Jones & Panda's initial Petition did not include all of the constitutional law claims asserted by the Guild. But Jones & Panda's First Amended Petition includes these claims. Pursuant to Kentucky Rule of Civil Procedure 15.03, the First Amended Petition relates back to the filing of the initial Petition.[2] Accordingly, the state proceedings are

---

[2] CR 15.03 states that "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

4

"currently pending" for the purposes of *Younger* abstention.

The Court must next review whether the currently pending proceedings involve an important state interest. *Doe v. Univ. of Ky.*, 860 F.3d at 369. In *Marathon*, the Court found that "Courts have recognized in the *Younger* analysis that states have a strong interest in protecting consumers and in administering their consumer protection statutes …. In various other contexts, the Supreme Court has recognized the states' important interest in consumer protection." 528 F.Supp.2d at 646 (citations omitted). It is therefore quite clear that the Fayette Circuit Court proceedings involve an important state interest.

Once the Court finds that the currently pending proceeding involves an important state interest, it must determine whether the state proceeding affords an adequate opportunity for the federal plaintiff to raise its constitutional claims. *Moore v. Sims*, 442 U.S. 415, 430 (1979). The federal plaintiffs bear the burden of showing whether state procedural law bars the presentation of their constitutional claims. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987).

The analysis for this element is slightly complicated by the fact that the state court Plaintiff (Jones & Panda) is distinct from the federal court Plaintiff (the Guild). Distinct parties are typically treated separately for purposes of *Younger* abstention. *See, e.g., Steffel v. Thompson,* 415 U.S. 452 (1974). However, the Supreme Court has specifically addressed whether distinct but very closely related parties should be treated the same for purposes of *Younger* abstention.

In *Hicks v. Miranda,* 422 U.S. 332 (1975), after two of their employees were charged under the state obscenity statute for showing a film and four copies of the film were seized, owners of an adult movie theater sued in federal court for return of their film copies and an injunction against the enforcement of the statute. The Court explained that, under the particular circumstances of that case, *Younger* abstention barred the federal suit: The owners' "interests and those of their employees were intertwined," given the fact that the seized films belonged to the owners but were central to the

pending prosecutions. *Id.* at 345. Consequently, "the federal action sought to interfere with the pending state prosecution," and the district court was constrained to abstain for that reason. *Id.* at 349.

The Sixth Circuit analyzed and relied upon *Hicks* in *Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630 (6th Cir. 2005). In *Marsh*, Plaintiffs in the federal court action were a political action committee, Citizens for a Strong Ohio ("Citizens"), the Ohio Chamber of Commerce, and three anonymous parties, John Doe, Alpha Corporation and Omega Corporation. *Id.* at 631. The factual background of *Marsh* is convoluted, but it provides a helpful analysis.

In the 2000 election cycle, Citizens sponsored television ads attacking certain Ohio Supreme Court Justice candidates. A separate group, Alliance for Democracy, filed a complaint with the Ohio Elections Commission ("OEC") arguing that these ads violated Ohio statutes for knowingly making false statements about the voting record of a candidate. *Id.* The OEC denied Citizens' First Amendment arguments and issued a subpoena to Citizens seeking records of the direct donors of Citizens, and indirect donors of Citizens through the Ohio Chamber of Commerce. Citizens refused to comply, and thus Alliance initiated enforcement proceedings in the Ohio state courts. The Franklin County Court of Common Pleas issued an enforcement order, subjecting Citizens to a $25,000 per day fine for failure to comply with the OEC subpoena, and ordered Citizens and the Ohio Chamber of Commerce to produce the donor records. Citizens and the Ohio Chamber of Commerce refused to comply with the subpoena and enforcement order.

Instead, Citizens, Ohio Chamber of Commerce, John Doe, Alpha Corporation and Omega Corporation ("Federal Court Plaintiffs") filed suit in federal district court seeking a judgment declaring that the OEC's application of Ohio election laws violated the First Amendment. Federal Court Plaintiffs also alleged that the OEC's adverse decisions interpreting Ohio election laws were preventing them from engaging in future political activity and were having an adverse effect on fundraising. OEC moved to dismiss. arguing that *Younger* required federal court abstention. The

6

district court granted the motion to dismiss on *Younger* abstention grounds.

Federal court plaintiffs in *Marsh* alleged that Alpha Corporation chose to contribute to Citizens to support its issue advocacy efforts, and that Alpha Corporation and Omega Corporation intended to support Citizens, and other issue advocacy efforts, in the future. Because of this argument, the Sixth Circuit found *Younger* abstention appropriate. The Court explained:

> [T]he rights of Alpha Corporation and Omega Corporation, vis-a-vis this lawsuit, are merely derivative of the rights of Citizens and the Ohio Chamber of Commerce to engage in the political activity complained of in the state action. Furthermore, Alpha Corporation and Omega Corporation are clearly seeking to interfere with the pending state action. Although Plaintiffs–Appellants did not seek an injunction against the enforcement of the subpoena against Citizens and Ohio Chamber, the effect of the declaration would be to prevent the enforcement of that subpoena and interfere directly with the pending state proceedings.

*Id.* at 636.

The Sixth Circuit thus affirmed the district court, finding that abstaining pursuant to *Younger* was proper, even when it applied to legally distinct entities. *See also Wisconsin Manufacturers & Commerce v. Wisconsin Elections Board,* 978 F.Supp.2d 1200 (W.D.Wis.1997) (Though anonymous corporations were not parties to the hearing before the Wisconsin Elections Board, the district court held that their interests were inextricably intertwined with a trade organization which was before the Board, and *Younger* therefore applied).

Comparing this action to *Marsh*, the Guild generally desires to support Amazon resellers, like Jones & Panda, just as Alpha Corporation in *Marsh* sought to support Citizens and the Ohio Chamber. However, the Guild is not an Amazon reseller itself and does not appear to sell goods causing it to be subject to the Kentucky Consumer Protection Act. Thus, the Guild's success on the merits is derivative of the rights of the state action party, Jones & Panda

As well, the Guild is also seeking to interfere with the state court action. The Guild used Jones & Panda's state court briefing as an exhibit to support its Motion for Preliminary Injunction, and is

seeking to prevent the Attorney General from investigating price gouging allegations against Jones & Panda (or any of its other members). This is evident in the Complaint's Prayer for Relief:

> 65. The Online Merchants Guild respectfully requests, on behalf of itself and its members, the following relief:
>
> a. A declaration pursuant to 28 U.S.C. § 2201 that the Kentucky AG's application of KRS 367.364 and KRS 367.170, including investigations and threatened or actual prosecution under that law, is unconstitutional as applied to the Online Merchants Guild's members as set forth herein;
>
> b. An order and judgment enjoining the Kentucky AG from applying KRS 367.364 and KRS 367.170, including investigations and threatened or actual prosecution under that law, to the Online Merchants Guild's members as set forth herein…

Like the plaintiff in *Marsh*, the Guild is requesting relief that would directly interfere with the state court action. Accordingly, abstention is appropriate.

### III.  Other pertinent information related to the state court litigation and its impact on the present case

After the Guild filed its Complaint in this action, Jones & Panda became a member of the Guild. Since that time, the cases have become substantively indistinguishable. Jones & Panda has amended its state court action to mirror this one, even including information from this action to support its claims. Similarly, the Guild has relied on the Jones & Panda case to argue for its Preliminary Injunction and seeks relief that would directly interfere with the state court action. The procedural result is that both this Court and the Fayette Circuit Court are simultaneously considering the same constitutional challenges to Kentucky's price gouging statutes, arising from the same set of facts.

## **CONCLUSION**

For the reasons set forth herein, the Court should dismiss the Guild's federal court claims in favor of the pending Fayette Circuit Court action.

Respectfully submitted,

*/s/ Justin D. Clark*
_____
Victor B. Maddox (KY Bar No. 43095)
*Assistant Deputy Attorney General*
J. Christian Lewis (KY Bar No. 87109)
Justin D. Clark (KY Bar No. 89313)
Matthew Cocanougher (KY Bar No. 94292)
*Office of Consumer Protection*
Kentucky Office of the Attorney General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
Tel:     (502) 696-5300
victor.maddox@ky.gov
christian.lewis@ky.gov
justind.clark@ky.gov
matthew.cocanougher@ky.gov

*Counsel for Attorney General Daniel Cameron*

## CERTIFICATE OF SERVICE

I certify that on June 9, 2020, this document was filed with the CM/ECF filing system, which electronically served a copy to all counsel of record.

*/s/ Justin D. Clark*
_____
*Counsel for Attorney General Daniel Cameron*