0E7BE2CA-DC7A-4EC2-9D27-37FD912E3357 : 000001 of 000026

**COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CIVIL ACTION NO. 20-CI-1252
DIVISION 9**

JONES & PANDA, LLC                                                    PETITIONER

v.

COMMONWEALTH OF KENTUCKY,
ex rel. DANIEL CAMERON, in his Official Capacity
as ATTORNEY GENERAL OF KENTUCKY                              RESPONDENT


## <u>MEMORANDUM IN SUPPORT OF RESPONDENT COMMONWEALTH OF KENTUCKY'S RESPONSE TO FIRST AMENDED PETITION</u>

### <u>INTRODUCTION</u>

In the midst of a global pandemic, the Attorney General learned of potentially unconscionable price gouging by those seeking to take advantage of Kentuckians, particularly with regard to medical and emergency supplies. To investigate, the Attorney General issued Civil Investigative Demands ("CIDs") to Kentucky merchants pursuant to his authority under the Kentucky Consumer Protection Act ("KCPA"). The Plaintiff here, Jones & Panda, LLC, is an online merchant who, according to credible information had price increases on medical and emergency supplies which potentially violate the Kentucky price gouging statutes and is asking the Court to set aside the CID served upon it.  Jones & Panda is essentially asking the Court to prevent the Attorney General from investigating allegations of online price gouging.

### <u>BACKGROUND</u>

The Kentucky Consumer Protection Act ("KCPA") authorizes the Attorney General to demand and receive information and documents from an entity when the Attorney General "has reason to believe" or "believes it to be in the public interest that an investigation should be made to ascertain whether" an entity "has engaged in, is engaging in, or is about to engage in any act or

1

practice declared to be unlawful by" the KCPA. *See* KRS 367.110(1); KRS 367.240; 367.250. The acts or practices declared unlawful by the KCPA include price gouging after the Governor declares a state of emergency and activates Kentucky's price gouging statutes.

The Attorney General received detailed information from Amazon.com, Inc. ("Amazon") regarding Jones & Panda's sales of respirators and hand sanitizers during the state of emergency related to the COVID-19 pandemic. The production of this information is addressed in the Attorney General's Motion for In Camera Review, filed in conjunction with this Response. The Attorney General subsequently served a CID upon Jones & Panda on March 25, 2020, requesting it to produce information related to its sale of respirators and hand sanitizers by April 15, 2020.

Jones & Panda requested an extension of time in which to respond to the CID until May 31, 2020. The Attorney General responded with an offer for a rolling production, which would have given Jones & Panda until May 1, 2020, for full production. Jones & Panda instead filed its Petition in this matter. The Attorney General responded and filed an Emergency Motion to Enforce the CID. On May 20, 2020, Jones & Panda filed a Motion to File First Amended Petition which was granted on May 22, 2020. The Attorney General now responds to the First Amended Petition.

As set forth herein, the Attorney General is well within his rights to issue the CID to Jones & Panda.

**FACTS**

In December 2019, the Hubei Province of the People's Republic of China experienced an outbreak of a never-before-seen disease, COVID-19, caused by a novel coronavirus known as SARS-CoV-2. According to the Center for Disease Control and Prevention, the novel coronavirus appears to be a highly contagious virus that spreads "[b]etween people who are in close contact

with one another (within about 6 feet)."[1] Since December, COVID-19 has spread throughout the world. The United States reported its first infection in mid-January 2020, and has seen more than 1,787,680 cases.[2] As of June 1, 2020, Kentucky has confirmed 9,704 cases and 431 deaths.[3]

As the number of COVID 19 cases continued to rise in January and February 2020, so did the prices of items thought to be helpful to prevent the spread of the disease, including respirators and hand sanitizers.[4]

Accordingly, Governor Beshear issued Executive Order 2020-215 on March 6, 2020, declaring a state of emergency in the Commonwealth. Governor Beshear activated the Commonwealth's price gouging laws at KRS 367.372 to 367.368 by issuance of Executive Order 2020-216.  Pursuant to KRS 367.374(a)(1), these laws went into effect for a fifteen day period, subject to the Governor's ability to extend the period for three additional fifteen day periods. KRS 367.374(2). Governor Beshear extended the price gouging orders for fifteen day periods through Executive Orders 2020-245, 2020-268, 2020-285, 2020-316, and 2020-414.

Jones & Panda is a for-profit Kentucky limited liability company. It operates as a third-party seller on Amazon offering for sale a number of different products. Specifically at issue here is Jones & Panda's offer for sale, and subsequent sales of, respirators and hand sanitizers through Amazon before and during the time period the price gouging laws were in effect.

At this stage, the Attorney General has not filed a Complaint against Jones & Panda. Instead, it issued a CID with eight requests for information related to Jones & Panda's offers to

---

[1] *See* Center for Disease Control, How it Spreads, available at https://www.cdc.gov/coronavirus/2019-ncov/prepare/transmission.html.
[2] *See* Coronavirus Disease, Cases in US, available at https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited June 1, 2020).
[3] *See* COVID 19, Kentucky Coronavirus Monitoring, https://govstatus.egov.com/kycovid19 (last visited June 1, 2020).
[4] "Where Do I Find Your Hand Sanitizer? Sorry, We Have None."
https://www.nytimes.com/2020/02/29/business/coronavirus-hand-sanitizer.html.

0E7BE2CA-DC7A-4EC2-9D27-37FD912E3357 : 000003 of 000026

sell respirators and hand sanitizers. In an attempt to thwart the Attorney General's investigation before it begins, Jones & Panda seeks to have this Court set aside the CID as unreasonable, unconstitutional, and overly broad. It is none of those of things.

## ARGUMENT

Kentucky's price gouging statute bars the offering for sale or rental of a good or service regardless of whether a sale or rental actually occurs for a price that grossly exceeds the price before an emergency declaration and that is unrelated to any increased cost to the seller. KRS 367.374(1)(b). The goods included in this provision, in relevant part, consist of "emergency supplies" and "medical supplies." *Id.*[5]

Based on the language of the KCPA, to investigate whether price gouging violations have occurred, the Attorney General must determine the prices at which items were being offered for sale, and information related to additional costs, percentage of price increases, fluctuations in the market, and pre-set contract prices. *See* KRS 367.374(1)(c). After receiving specific information related to Jones & Panda's offer for sale of respirators and hand sanitizers, the Attorney General issued a CID with eight requests specifically tailored to obtain the information authorized by the KCPA.

## I.   THE ATTORNEY GENERAL'S AUTHORITY FOR THE CID TO JONES & PANDA

Contrary to Jones & Panda's attempt to hamstring the Attorney General's investigative powers, courts are to give the KCPA "the broadest application in order to give Kentucky

---

[5] The statute excludes the following pricing exceptions from being actionable under the Act: (1) additional costs to provide the good or service; (2) ten percent (10%) or less above the price prior to the declaration; (3) ten percent (10%) or less above the sum of the seller's cost and normal price markup for a good or service; (4) consistent fluctuations in the commodity, regional, national, or international markets or seasonal fluctuations; or, (5) a contract price of a price set according to a formula that has been established prior to the Governor's Order. KRS 367.374(1)(c).

0E7BE2CA-DC7A-4EC2-9D27-37FD912E3357 : 000004 of 000026

consumers the broadest possible protection for allegedly illegal acts." *Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d 819, 821 (Ky. 1988); *Am. Nat'l Univ. of Kentucky, Inc. v. Commonwealth ex rel. Beshear*, 2019 WL 2479608, *1 (Ky. App. June 14, 2019). This is especially true given the current state of emergency.

As the Supreme Court has explained, KRS 367.240 provides two bases upon which the Attorney General may issue a CID to aid an investigation into possible price gouging:

> (a) When he 'has reason to believe that a person has engaged in, is engaged in, or is about to engage in any act or practice declared to be unlawful by KRS 367.110 to 367.300,' or,

> (b) When 'he believes it to be in the public interest that an investigation should be made to ascertain whether a person in fact has engaged in, is engaging in or is about to engage in, any act or practice' made unlawful by the aforementioned statutes.

*Hancock v. Pineur,* 533 S.W.2d 527, 528 (Ky. 1976).

In *Hancock*, Kentucky's highest court specifically held that there is no statutory or constitutional requirement that a CID recite on its face the reason or grounds for its issuance. *Id.* The Kentucky Supreme Court stated,

> Even if one were to regard the request for information in this case as caused by nothing more than official curiosity, nevertheless law-enforcing agencies have a legitimate right to satisfy themselves that corporate behavior is consistent with the law and the public interest.

> Of course a governmental investigation into corporate matters may be of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power. But it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant.

*Id.* at 529 (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950).

Jones & Panda relies heavily on *Ward v. Commonwealth,* 566 S.W.2d 426, 528 (Ky. App. 1978), which it must, *because that is the only Kentucky appellate court decision finding the issuance of a CID to be overly broad.* In *Ward*, the Attorney General issued a CID based solely on an allegation that a news media report from Florida questioned the quality of a consumer

0E7BE2CA-DC7A-4EC2-9D27-37FD912E3357 : 000006 of 000026

product that was being marketed in Kentucky. The Kentucky Court of Appeals held that such a media report, without more, was insufficient to justify a CID. *Id.*

This matter is entirely unlike *Ward*. Here, the Attorney General is not relying on a single media report; rather, the Attorney General issued a CID to Jones & Panda pursuant to detailed information he received from Amazon, the owner of the very platform where the items were being offered for sale. As described more fully in the Attorney General's Motion for In Camera Review, the Court's review of these materials in camera will leave no doubt that the Attorney General had and has sufficient information to issue the CID to Jones & Panda.

In *ABC, Inc. v. Com. ex rel. Conway,* 2012 WL 3629487, *3 (Ky. App., Aug. 24, 2012), *opinion not to be published,* ABC, Inc. attempted to make a similar argument as Jones & Panda makes here—that the CID issued in that case was insufficient under *Ward*. The Court of Appeals disagreed. The Court found that the Attorney General properly issued a CID that contained fifty requests for production of information and documents on a variety of subjects, including corporate information, admission criteria, administrative structure, licensure and accreditation information and history, student complaints, advertising and marketing documentation, recruiting information, employee compensation structures and policies, student job placement data, and student financing information. *Id.* at *8.

In *ABC, Inc.*, the Court held that the Attorney General must simply have "a suspicion of some wrongdoing." In *ABC, Inc.*, the Attorney General relied on student complaints regarding ABC, Inc.'s business practices, as well as broader national studies indicating potential systemic problems in the administration of public grant and loan programs by private for-profit colleges. *Id.* at *4.

Comparing *Ward* and *ABC, Inc.* to the CID issued here to Jones & Panda is instructive. Jones & Panda argues that the CID here is similar to that in *Ward.* To the contrary, the CID issued to Jones & Panda is plainly based on far more than a single news media report from Florida about a product being marketed in Kentucky. Indeed, the Attorney General issued a CID to Jones & Panda only after Amazon provided detailed information regarding potential violations of Kentucky's price gouging statutes. Specifically, Amazon provided seller IDs; storefront names; an Amazon Standard Identification Number (ASIN) for each product; the brand name of the product; an ASIN title of each product; the average selling price ("ASP") of the item on Amazon; the ASP of the item from the particular Kentucky seller; the percentage change in the ASP; the sales for each Kentucky seller; and, the units sold. The Attorney General relied on this information to initiate its investigation of Jones & Panda. The Attorney has filed a Motion for In Camera Review of this information in conjunction with this Response. The information received from Amazon clearly satisfies the "suspicion of wrongdoing" requirement from *ABC, Inc.*

Jones & Panda devotes much of its First Amended Petition to the details of its relationship with Amazon and attempts to shift blame to Amazon for any price gouging. While this information may be appropriate to include in Jones & Panda's response to the CID, Amazon is not a party to this action and the proffered information is wholly irrelevant to the Attorney General's authority under KRS 367.240. Ultimately, the Attorney General exercised his clear mandate to investigate price gouging with a CID tailored to the specific conduct at issue. The CID should be enforced for the benefit of Kentucky's residents and consumers.

## II.    THE SCOPE OF THE CID IS PROPER

Jones & Panda objects to the scope of the CID, arguing that the time frame from February 15, 2020 to March 25, 2020 is overly broad, unduly burdensome, and not properly related to the

temporal scope of the requests. Jones & Panda fails, however, to satisfy either of the two statutory grounds upon which a party may seek to modify or set aside a CID.

First, KRS 367.240(2) provides that a party may file a petition to *modify* a CID, but must state "good cause" for any petitioned modification. Jones & Panda has not provided any good cause whatsoever for any modification to the CID. The Court should contrast Jones & Panda's inability to provide good cause to modify the CID with the Attorney General's reasons for serving it, *i.e.*, the protection of Kentucky residents from illegal price gouging in the midst of a global pandemic.

Second, KRS 367.260 permits a protective order to protect against "any unreasonable investigative action." Jones & Panda has not precisely moved for the entry of a protective order here.  Nevertheless, the Court should easily conclude that there is nothing unreasonable about the CID served upon Jones & Panda.

After receiving specific information from Amazon regarding Jones & Panda's price increases for respirators and hand sanitizers, the Attorney General served the following requests:

(1) Identify, by day and each specific product, the price you charged for hand sanitizers and respirators, offered for resale on the Amazon sales platform from February 15, 2020 through March 25, 2020.

(2) State the basis behind every price change you made to hand sanitizers and respirators, offered for resale on the Amazon sales platform from February 15, 2020 through March 25, 2020. For each price increase that you contend was related to an increase in your cost, describe the nature of such increase, and identify all documents that substantiate your claim.

(3) Produce all documents relating to your purchases and sales of hand sanitizers and respirators, offered for resale on the Amazon sales platform from February 15, 2020 through March 25, 2020.

(4) Produce all documents relating to the supply and demand of hand sanitizers and respirators, offered for resale on the Amazon sales platform from February 15, 2020 through March 25, 2020, including correspondence, recordkeeping and any sources you relied on in making pricing decisions during that period.

8

0E7BE2CA-DC7A-4EC2-9D27-37FD912E3357 : 000009 of 000026

(5) Produce all documents relating to the retail prices you charged for hand sanitizers and respirators, offered for resale on the Amazon sales platform from February 15, 2020 through March 25, 2020, including any documents upon which you rely to justify any price increases that may have occurred.

(6) For each sale you made of hand sanitizers and respirators through the Amazon sales platform from February 15, 2020 through March 25, 2020, identify for each specific product: (a) the date of the sale; (b) the name, residence/location, and contact information of each buyer of such product; (c) the total cost paid by the buyer for each transaction, broken down by individual components.

(7) Produce all documents relating to each sale you made of hand sanitizers and respirators through the Amazon sales platform from February 15, 2020 through March 25, 2020, which identify, for each specific product: (a) the date of the sale; (b) the name, residence/location, and contact information of each buyer of such product; and (c) the total cost paid by the buyer for each transaction, broken down by individual components.

(8) Produce all documents you identified in your responses to the questions above.

Each request is specific to the items at issue. Each specifies a time frame of February 15, 2020 to March 25, 2020. This time frame enables the Attorney General to determine the proper price before declaration and potential market fluctuations (KRS 367.374(1)(4)), items having been sold at a reduced price thirty days prior to the activation of the statute (KRS 367.374(3)), and whether these items were sold by Jones & Panda before the emergency declaration (KRS 367.374(4)). The requests also seek information related to Jones & Panda's increases in costs which could qualify as an exception under the statute, negating the price gouging allegations (KRS 367.374(c)(1)). Thus, at this early stage, the Attorney General is not only seeking information related to prices, but also information showing whether Jones & Panda's pricing may fall under the exceptions to the statute in KRS 367.374(c). The information sought with the CID is all within the authority of the Attorney General to request and is, at the very least, reasonably relevant to its current investigation.

Jones & Panda argues that the CID is overly broad in requesting information regarding out-of-state sales. But, Jones & Panda's argument ignores KRS 367.374, which makes it clear that it covers not only actual sales but also the offering for sale of the specific goods listed in the statute. Because Jones & Panda offered its product for sale through the Amazon platform*, even the items that were eventually sold out-of-state were also offered to be sold to Kentucky residents.*

Jones & Panda finally contends that Amazon controls certain aspects of its pricing. Because Jones & Panda has not yet responded to the CID, the Attorney General cannot confirm whether Jones & Panda's prices are uniform throughout the country. At this initial stage, information related to sales of respirators and hand sanitizers both in Kentucky and outside Kentucky is reasonably relevant to the current investigation.

### III.   KENTUCKY'S PRICE GOUGING LAWS ARE CONSTITUTIONAL

#### A.  Dormant Commerce Clause

Jones & Panda bears the burden of showing that Kentucky's price gouging statutes violate the dormant Commerce Clause. It has not come anywhere close to meeting that burden.

Resolving a claim under the dormant Commerce Clause requires a two-step analysis. *Int'l Dairy Foods Ass'n v. Boggs*, 622 F.3d 628, 644 (6th Cir. 2010). First, the Court considers whether the law discriminates against interstate commerce. *See id.* "A statute can discriminate against out-of-state interests in three different ways: (a) facially, (b) purposefully, or (c) in practical effect." *E. Ky. Res. v. Fiscal Court of Magoffin Cty.*, 127 F.3d 532, 540 (6th Cir. 1997). If the law is discriminatory, to withstand scrutiny, it must be narrowly tailored to advance a legitimate local purpose. *See Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, __ U.S. __, 139 S. Ct. 2449, 2461 (2019). If the law is not discriminatory, the Court proceeds to the second step of the analysis, which asks whether any "burdens on interstate commerce [created by the law] are 'clearly

0E7BE2CA-DC7A-4EC2-9D27-37FD912E3357 : 000011 of 000026

excessive' in relation to the putative local benefits." *E. Ky. Res.*, 127 F.3d at 540 (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). This second step is known as the *Pike* balancing test, and laws evaluated under it "frequently survive . . . scrutiny." *Dep't of Rev. of Ky. v. Davis*, 553 U.S. 328, 339 (2008).

### 1.    Kentucky's price gouging statutes do not discriminate against out of state interests

Jones & Panda contends that the Attorney General's threatened application of Kentucky price gouging statutes constitutes an extraterritorial application of Kentucky law and is *per se* unconstitutional discrimination of out-of-state interests. It has misapplied the extraterritorial principle.

Generally speaking, a state may not directly regulate "commerce that takes place wholly outside of the State's borders." *Healy v. Beer Institute*, 491 U.S. 324, 336 (1989). But "[t]he Supreme Court has applied the extraterritoriality doctrine only in the limited context of price-affirmation statutes." *Am. Beverage Ass'n v. Snyder*, 735 F.3d 362, 373 (6th Cir. 2013).

The Sixth Circuit has only occasionally applied the extraterritoriality doctrine outside of that limited context. *Snyder* concerned Michigan's statutory requirement that manufacturers who sell their beverage containers in Michigan place a "symbol, mark, or other distinguishing characteristic" on the container that demonstrates it is "unique to [Michigan], or used only in [Michigan] and 1 or more other states that have laws substantially similar to this act."[6] *Snyder*, 735 F.3d at 367. The Sixth Circuit found that the statute had a prohibited extraterritorial effect, in part, because "Michigan's unique-mark requirement not only require[d] beverage companies to package a product unique to Michigan but also allow[ed] Michigan to dictate where the product [could] be sold." *Id.* at 376. The Sixth Circuit also emphasized that, under Michigan's statute,

---

[6] Mich. Comp. Laws Ann. § 445.572a (West 2011).

"other states must react today to Michigan's unique-mark requirement or also face legal consequences." *Id.*[7]

Kentucky's price gouging statutes are nothing like the statute struck down in *Snyder*. More to the point, Kentucky's price gouging statutes do not directly regulate commerce that takes place entirely outside of its territory; rather, Kentucky's price gouging statutes *only apply to transactions and proposed transactions that take place in Kentucky*. Since the activation of Kentucky's price gouging statutes as a result of Covid-19, the Attorney General has only issued CIDs to Kentucky businesses who, upon information and belief, were seeking to gouge Kentucky consumers. Unlike in *Snyder*, Kentucky's price gouging statutes in no way directly limit the ability of merchants to sell goods outside of Kentucky. *See id.* Nor do they require "other states" to "react" to Kentucky's law or "face legal consequences." *See id.*

Jones & Panda complains that Amazon's online platform makes it impossible to differentiate between sales inside of and outside of Kentucky, and that it "is not given the option to price commodities on a state by state basis, only the ability to offer their goods nationally via Amazon's eCommerce store." [First Amended Petition, Page 8]. But that is a function not of Kentucky law, but of Amazon's unique platform. *See Snyder*, 735 F.3d at 373 (holding that "[a] statute is extraterritorial if it 'directly controls* commerce occurring wholly outside the boundaries of a State [and] exceeds the inherent limits of the enacting State's authority'" (emphasis added) (quoting *Healy*, 491 U.S. at 336)). Taking Jones & Panda's logic to its conclusion, Kentucky's price gouging laws would be constitutional if Amazon merely changed its platform to suit Jones & Panda's preferences. At bottom, Jones & Panda's objection is with Amazon, not with Kentucky law. The dormant Commerce Clause does not protect a merchant's "chosen way of doing

---

[7] *Snyder* also considered the availability of reasonable alternatives to the challenged statute. *Snyder*, 735 F.3d at 375. That consideration weighs in favor of Kentucky's price gouging laws.

business." *Brown v. Hovatter*, 561 F.3d 357, 364 (4th Cir. 2009). Stated differently, the Commerce

Clause does not "protect the particular structure or methods of operation in a retail market." *Exxon*

*Corp. v. Governor of Maryland*, 437 U.S. 117, 127 (1978).

Furthermore, Kentucky's price gouging statutes are not "price controls" or "price

affirmation" statutes, like those that the Supreme Court has invalidated under the extraterritoriality

doctrine. Those statutes "force[d] regulated entities to certify that the in-state price they charge for

a good is no higher than the price they charge out-of-state." *Id.* at 373. Kentucky's price gouging

laws do no such thing. They do not directly limit the price a merchant uses in out-of-state

transactions. *See Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511 (1935) (considering a New York

law that prohibited out-of-state wholesalers from selling milk in New York unless they purchased

their milk from dairy farmers at the price paid to New York dairy farmers); *Healy*, 491 U.S. 324,

and *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 682 (1986) (both

concerning price affirmation regulations). These laws, moreover, are only in effect during the time

of a declared emergency, and are not imposed to control or protect any particular market.

Practically speaking, Jones & Panda's interpretation of the extraterritoriality principle

would invalidate any state's efforts to investigate or enforce price gouging laws against online

merchants. Defining the extraterritoriality principle simply by ill-defined extraterritorial effects as

Jones & Panda attempts to do is untenable, for it would be no limit at all, putting not only consumer

protection laws but also broad swaths of product liability law, internet regulation, and

environmental protection laws at risk.

> ## 2.    Kentucky's price gouging statutes do not place a significant burden on interstate commerce.

Jones & Panda claims, in the alternative, that the law places an "undue burden" on interstate

commerce, which is a narrow kind of challenge that teeters on the edge of judicial policymaking.

13

0E7BE2CA-DC7A-4EC2-9D27-37FD912E3357 : 000014 of 000026

*See Bendix Autolite Corp. v. Midwesco Enterprises, Inc*., 486 U.S. 888, 897 (1988) (Scalia, J., concurring) (describing the task of resolving an undue-burden claim as "ill suited to the judicial function"). A plaintiff bringing this second kind of dormant Commerce Clause claim faces a steep hurdle.

When a state law evenhandedly regulates both in-state and out-of-state activity, it might nevertheless violate the Constitution if it creates an incidental but excessive burden on interstate commerce. *See Bredesen*, 556 F.3d at 449. To prevail on such a claim, Jones & Panda must show that the law substantially burdens the interstate market as a whole—not just commerce in general or a particular individual. *Id*. at 451. That is because "[t]he dormant commerce clause protects interstate commerce, not individual firms or the structure of particular markets." *Id*. (citing *Exxon Corp. v. Governor of Md*., 437 U.S. at 127). And even then, Jones & Panda must still overcome the deferential balancing test articulated in *Pike v. Bruce Church, Inc*., 397 U.S. 137 (1970). Under *Pike*, courts must defer to the policy choices of the state legislature unless the plaintiff can demonstrate that the burden on interstate commerce is "clearly excessive." *Bredesen*, 556 F.3d at 451 (quoting *C & A Carbone, Inc. v. Town of Clarkstown, N.Y*., 511 U.S. 383, 390 (1994)). The Supreme Court "has not invalidated a law under *Pike* balancing in three decades." *Garber v. Menendez*, 888 F.3d 839, 845 (6th Cir. 2018).

So, to prevail in this case, Jones & Panda must plausibly allege that Kentucky's price gouging statute creates such an excessive burden on the interstate market that any local benefit must fall by the wayside. On this front, the First Amended Petition falls woefully short.

Kentucky's price gouging statute makes no distinction between in-state and out-of-state entities. Jones & Panda is offering to sell and is selling items in Kentucky (and nationwide) through the Amazon platform. As Jones & Panda is a Kentucky entity, it cannot argue that applying the

14

price gouging statute to items sold or offered for sale in Kentucky by a Kentucky business to a Kentucky customer would be an unconstitutional benefit for in-state economic interests while burdening out-of-state competitors. Thus, Jones & Panda presumably bases its argument upon items it offers for sale to out of state customers.

Kentucky's price gouging statutes do not distinguish between in-state and out-of-state sellers. Any entity *offering to sell* certain goods in Kentucky during the period of time the price gouging statutes are activated is subject to the provisions of the statute. Whether the seller is selling through Amazon, another website, or a physical location, there will be some modest incidental effects on interstate commerce with a statute that is designed to prevent certain unlawful price increases during a declared emergency.  Incidental effects such as this do not, however, render the statute unconstitutional as applied to Jones & Panda.

The benefits of the price gouging statutes, by comparison, are substantial. Natural disasters and medical emergencies can cause abnormal market disruptions for critical good and services, allowing unscrupulous sellers to exploit market scarcity and consumer fear to gain windfall profits. By limiting sellers to a reasonable percentage above a pre-emergency base price, Kentucky's statute eliminates prices "grossly in excess" of pre-emergency pricing, maintaining the public's ability to equally access basic necessities. KRS 367.374(1)(b). Left unchecked and without meaningful free-market competition, prices often rise well above conscionable levels and fair value in the face of public panic and fear. The effect on many consumers is akin to extortion. Price gouging statutes, therefore, are at the core of consumer protection.

The Court must defer to the Kentucky General Assembly's policy decisions unless Jones & Panda demonstrates a clearly excessive burden on interstate commerce. The Court cannot

ascertain a discriminatory effect or any excessive burden on interstate commerce because Jones & Panda has proffered no compelling evidence to demonstrate this burden.

### 3.   The Eastern District of Kentucky has previously upheld Kentucky's price gouging statutes under a dormant Commerce Clause challenge.

The United States District Court for the Eastern District of Kentucky has specifically applied the dormant Commerce Clause to Kentucky's price gouging statutes and found no constitutional violations. In *Marathon Petroleum Co. LLC v. Stumbo*, 528 F.Supp.2d 639 (E.D. Ky. 2007), the Court addressed Governor Fletcher's activation of Kentucky's price gouging statutes in response to Hurricane Katrina. Governor Fletcher specifically activated the price gouging statutes to prevent the illegal inflation in the price of gasoline. Following an investigation, the Attorney General filed suit against Marathon for selling gasoline grossly in excess of its pre-emergency prices and unrelated to any increase in costs.  *Id.* at 643. Marathon argued that Kentucky's price gouging statutes were unconstitutional as applied to it based on, among other provisions, the dormant Commerce Clause. *Id.* The Court dismissed Marathon's argument in full, finding "no basis for determining that the statute patently violates the dormant Commerce Clause." *Id.* at 650.

It did not matter that Marathon sells its gasoline nationwide.  It was still subject to Kentucky's price gouging statutes. Similarly, Jones & Panda's decision to sell products on Amazon to reach a nationwide market does not exempt them from Kentucky's price gouging statutes. Kentucky's statutory scheme does not directly regulate offerings or transactions that take place outside of Kentucky. There is thus no violation of the dormant Commerce Clause, and Jones & Panda's position to the contrary must fail.

0E7BE2CA-DC7A-4EC2-9D27-37FD912E3357 : 000016 of 000026

### B.    Kentucky's price gouging statutes comport with due process.

### 1.    KRS 367.374 sets forth a legitimate state interest.

Jones & Panda contends that Kentucky's price gouging statutes violate its right to due process.  To succeed on its due-process claim, Jones & Panda must show that Kentucky's price gouging statutes are "arbitrary and irrational—that no rational relationship exists between the [laws] and a legitimate government objective." *See Blue Diamond Coal Co. v. Shalala,* 79 F.3d 516, 521 (1996).  Under rational-basis review, a statute must be upheld "under any plausible justification offered by the state, or even hypothesized by the court." *Am. Express Travel Related Servs. Co. v. Kentucky*, 641 F.3d 685, 690 (6th Cir. 2011). This requires Jones & Panda "to negate every conceivable basis which might support [the challenged law]." *See F.C.C. v. Beach Commc'ns, Inc*., 508 U.S. 307, 315 (1993) (citation omitted). Moreover, "there is no need for mathematical precision in the fit between justification and means." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal*., 508 U.S. 602, 639 (1993).

The legislative purpose of the Kentucky General Assembly in adopting KRS 367.374 and its accompanying sections is the protection of Kentucky consumers from the unscrupulous and manipulative practice of price gouging in times of disasters or emergencies. A global pandemic unquestionably constitutes such an emergency. This legislative purpose easily survives rational basis review. There can be no doubt that the objectives set forth in Kentucky's price gouging statutes qualify as legitimate government interests. Moreover, the legal effects of KRS 367.374 are effective only for 15 days from the date of implementation. This limitation renders the law rationally and reasonably related to the bad actions the General Assembly seeks to prevent.

Furthermore, the means chosen to advance that purpose, *i.e.*, imposition of civil penalties on persons or businesses engaging in price gouging after a state of emergency is declared, are not

17

unreasonable or arbitrary. In the context of common law, tortious conduct involving economic duress, business compulsion, fraud or undue influence justify the award of compensatory and punitive damages. Accordingly, KRS 367.374, on its face, does not violate substantive due process, and easily survives rational basis review.[8]

### 2. The price gouging statutes are not impermissibly vague in violation of due process.

Jones & Panda summarily contends that KRS 367.374 and KRS 367.170 violate principles of due process because they are "unconstitutionally vague," stating that they "fail to give ordinary people fair notice of the conduct they punish, or so standardless that they invite arbitrary enforcement." (First Amended Petition at Page 10)  Even a cursory examination of KRS 367.374 refutes this claim.

"[B]ecause we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108-109 (1972).  Legislation must provide "fair warning" and "explicit standards for those who apply them." *Id*. If legislation is not concerned with criminal conduct or the First Amendment, the Court is to be lenient to the legislation in evaluating a claim of vagueness. *Doe v. Staples,* 706 F.2d 985 (6th Cir. 1983). Indeed, to find legislation void for vagueness, the Court must find the law or statute impermissibly vague in all its applications or substantially incomprehensible. *See Village of*

---

[8] Consumer protection laws such as KRS 367.374 that prohibit price gouging in the aftermath of a disaster or upon the declaration of an emergency have been widely adopted across the United States.  This model has been regarded as an effective tool in combating gouging in post-disaster environments, where antitrust statutes or common law approaches have failed.  *See* Geoffrey C. Rapp, *Gouging: Terrorist Attacks, Hurricanes, and the Legal and Economic Aspects of Post-Disaster Price Regulation*, 94 Ky. L. J. 535, 540 (2005-2006).

18

*Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494-95 (1982) and *Exxon Corp. v. Busbee,* 644 F.2d 1040 (5th Cir. 1981), *cert. denied,* 454 U.S. 340 (1981).

KRS 367.374 plainly and unmistakably provides fair notice of the prohibited conduct. The challenged statute prohibits the sale or rental of goods and services at a grossly excessive price during the period of implementation following a declaration of an emergency. A person of average intelligence would understand that the targeted conduct is price gouging during a declared state of emergency. Moreover, KRS 367.376 mandates a state agency, the Division of Emergency Management (the "Division"), to notify the public about the implementation, renewal, or termination (of the implementation) of KRS 367.374. KRS 367.376 even allows for the registration with the Division for purposes of receiving notices regarding the implementation, renewal, or termination of the implementation of KRS 367.374. These requirements further minimize the risk of any lack of notice, such that KRS 367.374, when implemented, would be unknown only to those who willfully ignore the warning.

Additionally, when read with KRS 367.372, 367.376, and 367.378, KRS 367.374 does not provide for arbitrary or discriminatory enforcement. For instance, KRS 367.372 limits liability to instances where (a) the defendant offers to sell or rent (b) certain goods or services identified in the statute[9], (c) for the duration of the declared emergency, or any extension thereof not to exceed 30 days, (d) at a price grossly in excess of the price before the declaration. These standards protect the businesses likely affected by this type of regulation from arbitrary or discriminatory enforcement.

---

[9] The following goods and services are subject to Kentucky's price gouging statute: building materials; consumer food items; emergency supplies; gasoline; medical supplies; repair or reconstruction services; and, transportation, freight, and storage services. Hand sanitizer and ventilators certainly fall within the definition of emergency supplies and medical supplies.

0E7BE2CA-DC7A-4EC2-9D27-37FD912E3357 : 000019 of 000026

Jones & Panda only makes broad, generalized references to KRS 367.374's alleged vagueness, providing little detail about why or how Kentucky's price gouging statutes are unlawful. Regardless, in the context of a legislative response to a disaster or an emergency, the law does not demand that the legislature to impose static measures, without regard to mechanism that would adapt to the various crises in human affairs.  To do so would nullify the effective operation of governmental regulation and render it unworkable. *See Opp Cotton Mills v. Adm'r of Wage & Hour Division of Dep't of Labor,* 312 U.S. 126, 145 (1941) (noting that "[i]n an increasingly complex society Congress obviously could not perform its functions if it were obliged to find all the facts subsidiary to the basic conclusions which support the defined legislative policy…."). Neither the United States (nor the Kentucky Constitution) "demand[s] the impossible or impracticable." *Id.*

The essential function of Kentucky's General Assembly is the determination of legislative policy and its formulation as a rule of conduct. That essential function is preserved when the legislature specifies the basic conclusions of fact upon ascertainment of which, from relevant data provided and established by a designated administrative agency, it ordains that its statutory command is to be effective. *See Opp Cotton Mills,* 312 U.S. at 145. Here, KRS 367.374 satisfies those requirements.

### C. The Attorney General's investigation into price gouging complaints does not violate the Equal Protection Clause.

Jones & Panda contends that the Attorney General's "selective application" of Kentucky's price gouging statutes violates the Equal Protection Clause because it is "targeting" Jones & Panda, but not Amazon. (*See* First Amended Petition at 10.) This argument is without merit.

The Equal Protection Clause of the Fourteenth Amendment commands that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend.

0E7BE2CA-DC7A-4EC2-9D27-37FD912E3357 : 000021 of 000026

XIV, § 1. "The Equal Protection Clause prevents states from making distinctions that: (1) burden a fundamental right; (2) target a suspect class; or, (3) intentionally treat one individual differently from others similarly situated without any rational basis." *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010).

To state an equal protection claim where neither a suspect class nor a fundamental right is implicated, as here, Jones & Panda must establish that: (1) the state actor intentionally treated it differently from others similarly situated; (2) this difference in treatment was caused by Jones & Panda's membership in a particular, identifiable class; and, (3) this different treatment was not rationally related to a legitimate state interest. *See Davis v. Prison Health Servs*., 679 F.3d 433, 440 (6th Cir. 2012) ("In typical equal protection cases, plaintiffs 'generally allege that they have been arbitrarily classified as members of an 'identifiable group.'" (quoting *Engquist v. Or. Dep't of Agric*., 553 U.S. 591, 601 (2008)).

The Attorney General has not made any distinctions among persons or entities suspected of illegal price gouging. He has not treated any online merchants or traditional retailers differently from others similarly situated, and is investigating all price gouging allegations equally. If the Attorney General receives evidence or information that gives reason to serve a CID upon Amazon *or any other seller or retailer*, then the Attorney General will take appropriate action at the appropriate time. This is only the investigative stage.

Jones & Panda provides no support for its Equal Protection argument. Apart from its vague and unsupported references to Amazon's business model, Jones & Panda does not identify any online merchant or traditional retailer who is "similarly situated" and intentionally being treated differently.

D.      **Kentucky's price gouging statutes do not violate the First Amendment.**

In *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc*. 425 U.S. 748 (1976), the Supreme Court extended First Amendment free speech protection to commercial speech, noting that speech does not lose its protection simply because money is involved. But, just because commercial speech is protected speech does not mean that it is immune from government regulation. *Id*. at 770.

In *Central Hudson Gas and Electric Corp. v. Public Service Commissio*n 457 U.S. 557 (1980), the Court adopted a four-part test for whether governmental regulation of commercial speech is constitutional. First, for the commercial speech to be protected under the First Amendment, the speech must concern *lawful* activity, and the speech must not be misleading. Only if this step is met will the court use the following three steps to determine whether the government regulation is constitutional.  Thus, if the speech is *lawful*, the governmental interest in regulating the speech must be substantial; the regulation must directly advance the governmental interest asserted; and, the regulation must not be more extensive than is necessary to serve the identified substantial interest.

Here, the "speech"—gouging Kentuckians by charging unconscionable prices in the midst of a declared emergency, a global pandemic no less—is *unlawful*.  There is simply no other way to put it.  Kentucky's General Assembly, like state legislatures across the country, enacted KCPA to prohibit unscrupulous sellers from offering to sell or selling certain items at exorbitant prices.[10]

---

[10] These statutes can take many forms. Some include a pricing percentage limit.  *See, e.g*., Cal. Penal Code § 396 (West 2019); N.J. Stat. Ann. §§ 56:8-108, 56:8-109 (West 2019). Other states with a pricing percentage limit include Arkansas, Kansas, Maryland, Maine, Oklahoma, Oregon and West Virginia. Some include outright bans on price increases during emergencies.  *See, e.g*., Ga Code Ann. § 10-1-393.4 (West 2020). Other states with an outright ban on price increases during emergencies include Connecticut, Hawaii, Louisiana, Mississippi, and Utah.  Finally, some states prohibit amorphous "unconscionable" pricing.  *See, e.g*., Tex. Bus. & Com. Code Ann. § 17.46(b)(27) (West 2019); N.Y. Gen. Bus. Law § 396-r (McKinney 2019); Fla. Stat. § 501.160 (2020). Other states that prohibit "unconscionable" pricing include Alabama, Idaho, Iowa, Massachusetts, Michigan, Missouri, North Carolina, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Vermont, Virginia, and Wisconsin.

0E7BE2CA-DC7A-4EC2-9D27-37FD912E3357 : 000022 of 000026

And, there has never once been a finding that any of these price gouging laws or prohibitions violate commercial free speech rights. Indeed, these laws have been uniformly upheld as protecting a substantial governmental interest. *See, e.g.*, *Marathon Petroleum Co.*, 528 F. Supp.2d at 650. Because the alleged speech involved here is unlawful, the analysis ends. Jones & Panda's speech is not constitutionally protected speech.

## IV.   THE COURT SHOULD CONSIDER AND RESPECT KENTUCKY'S CONSTITUTIONAL SEPARATION OF POWERS DOCTRINE.

The Attorney General is an officer of the executive branch of Kentucky state government. *See* Ky. Const. §§ 91, 93. Jones & Panda is asking the Court to prevent a lawful function of Kentucky's executive branch, namely an investigation.

Section 27 of the Kentucky Constitution establishes the separation of powers among the legislative, executive, and judicial branches. Section 28 prohibits one branch from exercising the powers that belong to another. Jones & Panda's Petition—and the relief it seeks—invites the Court to "intrude on this well-established Kentucky constitutional value." *Appalachian Racing, LLC v. Comm.*, 504 S.W.3d 1, 5 (Ky. 2016). The Court should again decline this invitation.

### A.   Investigations are an executive branch function.

The power to investigate is purely an executive function. *See Comm., Cabinet for Health & Family Servs. v. Garber*, 340 S.W.3d 588, 590 (Ky. App. 2011). The Attorney General possesses both the statutory and common law executive power to initiate an investigation. *See Comm. v. Johnson*, 423 S.W.3d 718 (Ky. 2014). From a statutory perspective, KRS 15.700 provides that the Attorney General is the Commonwealth's "chief law enforcement officer." The Attorney General's authority to investigate also arises from the common law. *See Johnson*, 423 S.W.3d at 725 (noting that this view "comports with the general rule in the United States"). Kentucky's high

court has unequivocally held that the Attorney General may investigate a matter before filing a civil suit. *Strong v. Chandler*, 70 S.W.3d 405, 410 (Ky. 2002).

> **B.      Plaintiff's request to halt an ongoing investigation would infringe on the separation of powers doctrine.**

The Attorney General's investigatory authority is well developed, and nothing in the Petition here authorizes the Court to prevent the Attorney General from *investigating* price gouging allegations against Jones & Panda. This is not, however, to say that the Attorney General's investigatory authority is unchecked. Rather, the check must come at the appropriate time. Enjoining an executive function preemptively (*i.e.*, before the agency had acted on an investigation) would be a core violation of the separation of powers. *See Appalachian Racing*, *LLC*, 504 S.W.3d at 4-5 (quoting *Nixon v. Fitzgerald*, 457 U.S. 731, 760-61 (1982) (emphasizing that the "essential purpose of separation of powers is to allow for independent functioning of each coequal branch of government within its assigned sphere of responsibility, free from risk of control, interference, or intimidation by other branches.").

> **V.       JONES & PANDA'S REQUEST FOR EXTENSION OF TIME**

The Attorney General served Jones & Panda with the CID on March 25, 2020. Jones & Panda did not respond to the CID until April 10, 2020, at which time it sought an extension of time in which to respond. The Attorney General proposed a rolling production that would have given Jones & Panda until May 1, 2020 to respond to the CID. Remarkably, Jones & Panda now claims this attempt to provide a reasonable extension while continuing to move forward with the investigation showed "extreme indifference" and requests reasonable attorneys' fees and court costs for filing this Petition.

This request must be summarily denied. First, Jones & Panda sets forth no authority to support sanctions here. Second, Jones & Panda's request demonstrates an astonishing callousness

to Kentucky citizens and consumers, all of whom are living through a global pandemic, and who deserve the right to have medical and emergency supplies offered for sale in a manner that complies with Kentucky law and public policy.

## **CONCLUSION**

**WHEREFORE**, for the reasons set forth in this Memorandum, the Attorney General respectfully request that Jones & Panda's First Amended Petition be DENIED.

Respectfully submitted,

DANIEL CAMERON
ATTORNEY GENERAL

*/s/ J. Christian Lewis*
_____

J. Christian Lewis
Justin D. Clark
Matthew C. Cocanougher
Office of Consumer Protection
Kentucky Office of the Attorney General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
Tel:     (502) 696-5300
christian.lewis@ky.gov
justind.clark@ky.gov
matthew.cocanougher@ky.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this the 1st day of June 2020, a true and accurate copy of the foregoing was filed electronically with the Court's CourtNet e-filing system and conformed copies of same were served electronically on Jones & Panda.

*/s/ J. Christian Lewis*