COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CIVIL ACTION NO. 20-CI-1252
DIVISION 9

JONES & PANDA, LLC                                                                 PETITIONER

v.

COMMONWEALTH OF KENTUCKY,
ex rel. DANIEL CAMERON, in his Official Capacity
as ATTORNEY GENERAL OF KENTUCKY                                         RESPONDENT

### NOTICE

The Parties shall take notice that this matter will come on for hearing via a scheduled video hearing, should the Court be amenable. If the Court so allows, undersigned counsel will coordinate calendars and obtain a date and time suitable to all parties and the Court.

### RESPONSE TO PETITION AND
### EMERGENCY MOTION TO ENFORCE CIVIL INVESTIGATIVE DEMAND

The Respondent, Commonwealth of Kentucky *ex rel.* Daniel Cameron, in his official capacity as Attorney General of Kentucky, respectfully submits this Response and Emergency Motion to Enforce the Civil Investigative Demand.

The Kentucky Consumer Protection Act ("KCPA"), specifically KRS 367.240 and KRS 367.250, authorizes the Attorney General to issue a Civil Investigative Demand ("CID") for information and documents when he has reason to believe that a person has engaged in, is engaging in, or is about to engage in any act or practice declared to be unlawful by KRS 367.110 to KRS 367.300, or when he believes it to be in the public interest that an investigation should be made to ascertain whether a person in fact has engaged in, is engaging in or is about to engage in, any act or practice declared to be unlawful by the KCPA. Importantly, KRS 367.240 provides

1

that persons believed to have information, documentary material, or physical evidence relevant to the alleged or suspected violation may also be served with and required to respond to a CID.

Respondent respectfully moves that Petitioner, Jones & Panda, LLC be ordered to comply with the Attorney General's lawfully issued CID.

For his Response and in support of this Emergency Motion, the Attorney General relies on the accompanying Memorandum.

Respectfully submitted,

DANIEL CAMERON
ATTORNEY GENERAL

*/s/ J. Christian Lewis*
_____
J. Christian Lewis
Justin D. Clark
Matthew C. Cocanougher
Office of Consumer Protection
Kentucky Office of the Attorney General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
Telephone:    (502) 696-5300
christian.lewis@ky.gov
justind.clark@ky.gov
matthew.cocanougher@ky.gov

### CERTIFICATE OF SERVICE

I hereby certify that on this the 5th day of May 2020, a true and accurate copy of the foregoing was filed electronically with the Court's CourtNet e-filing system and conformed copies of same were served electronically on the Petitioner.

*/s/ J. Christian Lewis*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CIVIL ACTION NO. 20-CI-1252
DIVISION 9

JONES & PANDA, LLC                                                            PETITIONER

v.

COMMONWEALTH OF KENTUCKY,
ex rel. DANIEL CAMERON, in his Official Capacity
as ATTORNEY GENERAL OF KENTUCKY                                               RESPONDENT

**MEMORANDUM IN SUPPORT OF RESPONDENT COMMONWEALTH OF KENTUCKY'S RESPONSE TO PETITION AND EMERGENCY MOTION TO ENFORCE THE CIVIL INVESTIGATIVE DEMAND**

**INTRODUCTION**

The Kentucky Consumer Protection Act ("KCPA") authorizes the Attorney General to demand and receive information and documents from an entity when the Attorney General "has reason to believe" or "believes it to be in the public interest that an investigation should be made to ascertain whether" an entity "has engaged in, is engaging in, or is about to engage in any act or practice declared to be unlawful by" the KCPA. *See* KRS 367.110(1); KRS 367.240; 367.250. The acts or practices declared unlawful by the KCPA include price gouging after the Governor declares a state of emergency and activates Kentucky's price gouging statutes.

The Attorney General received detailed information from Amazon.com, Inc. ("Amazon") regarding Petitioner's sales of respirators and hand sanitizers during the state of emergency related to the COVID-19 pandemic. The Attorney General subsequently served a CID upon Petitioner on March 25, 2020, requesting it to produce information related to its sale of respirators and hand sanitizers by April 15, 2020.

Petitioner requested an extension of time in which to respond to the CID until May 31, 2020. The Attorney General responded with an offer for a rolling production, which would have

1

given Petitioner until May 1, 2020, for full production. Petitioner instead filed its Petition in this matter.

As set forth herein, the Attorney General is well within his rights to issue the CID to Petitioner.

**FACTS**

In December 2019, the Hubei Province of the People's Republic of China experienced an outbreak of a never-before-seen disease, COVID-19, caused by a novel coronavirus known as SARS-CoV-2. According to the Center for Disease Control and Prevention, the novel coronavirus appears to be a highly contagious virus that spreads "[b]etween people who are in close contact with one another (within about 6 feet)."[1] Since December, COVID-19 has spread throughout the world. The United States reported its first infection in mid-January 2020, and has seen more than 1,152,372 cases.[2] As of May 5, 2020, Kentucky has confirmed 5,245 cases and 261 deaths.[3]

As the number of COVID 19 cases continued to rise in January and February 2020, so did the prices of items thought to be helpful to prevent the spread of the disease, including respirators and hand sanitizers.[4]

Accordingly, Governor Beshear issued Executive Order 2020-215 on March 6, 2020, declaring a state of emergency in the Commonwealth. Governor Beshear activated the Commonwealth's price gouging laws at KRS 367.372 to 367.368 by issuance of Executive Order 2020-216. Pursuant to KRS 367.374(a)(1), these laws went into effect for a fifteen day period,

---

[1] *See* Center for Disease Control, How it Spreads, available at https://www.cdc.gov/coronavirus/2019-ncov/prepare/transmission.html.
[2] *See* Coronavirus Disease, Cases in US, available at https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited May 5, 2020).
[3] *See* COVID 19, Kentucky Coronavirus Monitoring, https://govstatus.egov.com/kycovid19.
[4] "Where Do I Find Your Hand Sanitizor? Sorry, We Have None." https://www.nytimes.com/2020/02/29/business/coronavirus-hand-sanitizer.html.

subject to the Governor's ability to extend the period for three additional fifteen day periods. KRS 367.374(2). Governor Beshear extended the price gouging orders for fifteen day periods through Executive Orders 2020-245 and 2020-268.

Petitioner is a for-profit Kentucky limited liability company. It operates as a third-party seller on Amazon offering for sale a number of different products. Specifically at issue here is Petitioner's offer for sale, and subsequent sales of, respirators and hand sanitizers through Amazon before and during the time period the price gouging laws were in effect.

At this stage, the Attorney General has not filed a Complaint against Petitioner. Instead, it issued a CID with eight requests for information related to Petitioner's offers to sell respirators and hand sanitizers. In an attempt to thwart the Attorney General's investigation before it begins, Petitioner seeks to have this Court set aside the CID as unreasonable, unconstitutional, and overly broad. It is none of those of things.

Therefore, the Attorney General moves the Court to enforce the CID and compel proper responses.

## ARGUMENT

Kentucky's price gouging statute bars the offering for sale or rental of a good or service regardless of whether a sale or rental actually occurs for a price that grossly exceeds the price before an emergency declaration and that is unrelated to any increased cost to the seller. KRS 367.374(1)(b). The goods included in this provision, in relevant part, consist of "emergency supplies" and "medical supplies." *Id.*[5]

---

[5] The statute excludes the following pricing exceptions from being actionable under the Act: (1) additional costs to provide the good or service; (2) ten percent (10%) or less above the price prior to the declaration; (3) ten percent (10%) or less above the sum of the seller's cost and normal price markup for a good or service; (4) consistent fluctuations in the commodity, regional, national, or international markets or seasonal fluctuations; or, (5) a contract price of a price set according to a formula that has been established prior to the Governor's Order. KRS 367.374(1)(c).

3

Based on the language of the KCPA, to investigate whether price gouging violations have occurred, the Attorney General must determine the prices at which items were being offered for sale, and information related to additional costs, percentage of price increases, fluctuations in the market, and pre-set contract prices. *See* KRS 367.374(1)(c). After receiving specific information related to Petitioner's offer for sale of respirators and hand sanitizers, the Attorney General issued a CID with eight requests specifically tailored to obtain the information authorized by the KCPA.

### I. The Attorney General's Authority for the CID to Petitioner

Contrary to Petitioner's attempt to hamstring the Attorney General's investigative powers, courts are to give the KCPA "the broadest application in order to give Kentucky consumers the broadest possible protection for allegedly illegal acts." *Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d 819, 821 (Ky. 1988); *Am. Nat'l Univ. of Kentucky, Inc. v. Commonwealth ex rel. Beshear*, 2019 WL 2479608, *1 (Ky. App. June 14, 2019). This is especially true given the current state of emergency.

As the Supreme Court has explained, KRS 367.240 provides two bases upon which the Attorney General may issue a CID to aid an investigation into possible price gouging:

> (a) When he 'has reason to believe that a person has engaged in, is engaged in, or is about to engage in any act or practice declared to be unlawful by KRS 367.110 to 367.300,' or,
>
> (b) When 'he believes it to be in the public interest that an investigation should be made to ascertain whether a person in fact has engaged in, is engaging in or is about to engage in, any act or practice' made unlawful by the aforementioned statutes.

*Hancock v. Pineur,* 533 S.W.2d 527, 528 (Ky. 1976).

In *Hancock*, Kentucky's highest court specifically held that there is no statutory or constitutional requirement that a CID recite on its face the reason or grounds for its issuance. *Id.* The Kentucky Supreme Court stated,

Filed 20-CI-01252 05/05/2020 Vincent Riggs, Fayette Circuit Clerk

> Even if one were to regard the request for information in this case as caused by nothing more than official curiosity, nevertheless law-enforcing agencies have a legitimate right to satisfy themselves that corporate behavior is consistent with the law and the public interest.
>
> Of course a governmental investigation into corporate matters may be of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power. But it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant.

*Id.* at 529 (*quoting United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950).

Petitioner relies heavily on *Ward v. Commonwealth,* 566 S.W.2d 426, 528 (Ky. App. 1978), which it must, *because that is the only Kentucky appellate court decision finding the issuance of a CID to be overly broad.* In *Ward*, the Attorney General issued a CID based solely on an allegation that a news media report from Florida questioned the quality of a consumer product that was being marketed in Kentucky. The Kentucky Court of Appeals held that such a media report, without more, was insufficient to justify a CID. *Id*.

This matter is entirely unlike *Ward*. Here, the Attorney General is not relying on a single media report; rather, the Attorney General issued a CID to Petitioner pursuant to detailed information he received from Amazon, the owner of the very platform where the items were being offered for sale.

In *ABC, Inc. v. Com. ex rel. Conway,* 2012 WL 3629487, *3 (Ky. App., Aug. 24, 2012), *opinion not to be published,* ABC, Inc. attempted to make a similar argument as Petitioner makes here—that the CID issued in that case was insufficient under *Ward*. The Court of Appeals disagreed. The Court found that the Attorney General properly issued a CID that contained fifty requests for production of information and documents on a variety of subjects, including corporate information, admission criteria, administrative structure, licensure and accreditation information and history, student complaints, advertising and marketing documentation, recruiting information,

5

employee compensation structures and policies, student job placement data, and student financing information. *Id.* at *8.

In *ABC, Inc.*, the Court held that the Attorney General must simply have "a suspicion of some wrongdoing." In *ABC, Inc.*, the Attorney General relied on student complaints regarding ABC, Inc.'s business practices, as well as broader national studies indicating potential systemic problems in the administration of public grant and loan programs by private for-profit colleges. *Id.* at *4.

Comparing *Ward* and *ABC, Inc.* to the CID issued here to Petitioner is instructive. Petitioner argues that the CID here is similar to that in *Ward*. To the contrary, the CID issued to Petitioner is plainly based on far more than a single news media report from Florida about a product being marketed in Kentucky. Indeed, the Attorney General issued a CID to Petitioner only after Amazon provided detailed information regarding Petitioner's potential violations of Kentucky's price gouging statutes. The information received from Amazon clearly satisfies the "suspicion of wrongdoing" requirement from *ABC, Inc*.

Petitioner devotes much of its Petition to the details of its relationship with Amazon and attempts to shift blame to Amazon for any price gouging. While this information may be appropriate to include in Petitioner's response to the CID, Amazon is not a party to this action and the proffered information is wholly irrelevant to the Attorney General's authority under KRS 367.240. Ultimately, the Attorney General exercised his clear mandate to investigate price gouging with a CID tailored to the specific conduct at issue. The CID should be enforced for the benefit of Kentucky's residents and consumers.

## II. The Scope of the CID is Proper

Petitioner objects to the scope of the CID, arguing that the time frame from February 15, 2020 to March 25, 2020 is overly broad, unduly burdensome, and not properly related to the temporal scope of the requests. Petitioner fails, however, to satisfy either of the two statutory grounds upon which a party may seek to modify or set aside a CID.

First, KRS 367.240(2) provides that a party may file a petition to *modify* a CID, but must state "good cause" for any petitioned modification. Petitioner has not provided any good cause whatsoever for any modification to the CID. The Court should contrast Petitioner's inability to provide good cause to modify the CID with the Attorney General's reasons for serving it, *i.e.*, the protection of Kentucky residents from illegal price gouging in the midst of a global pandemic.

Second, KRS 367.260 permits a protective order to protect against "any unreasonable investigative action." Petitioner has not precisely moved for the entry of a protective order here. Nevertheless, the Court should easily conclude that there is nothing unreasonable about the CID served upon Petitioner.

After receiving specific information from Amazon regarding Petitioner's sales of respirators and hand sanitizers, the Attorney General served the following requests:

(1) Identify, by day and each specific product, the price you charged for hand sanitizers and respirators, offered for resale on the Amazon sales platform from February 15, 2020 through March 25, 2020.

(2) State the basis behind every price change you made to hand sanitizers and respirators, offered for resale on the Amazon sales platform from February 15, 2020 through March 25, 2020. For each price increase that you contend was related to an increase in your cost, describe the nature of such increase, and identify all documents that substantiate your claim.

(3) Produce all documents relating to your purchases and sales of hand sanitizers and respirators, offered for resale on the Amazon sales platform from February 15, 2020 through March 25, 2020.

7

(4) Produce all documents relating to the supply and demand of hand sanitizers and respirators, offered for resale on the Amazon sales platform from February 15, 2020 through March 25, 2020, including correspondence, recordkeeping and any sources you relied on in making pricing decisions during that period.

(5) Produce all documents relating to the retail prices you charged for hand sanitizers and respirators, offered for resale on the Amazon sales platform from February 15, 2020 through March 25, 2020, including any documents upon which you rely to justify any price increases that may have occurred.

(6) For each sale you made of hand sanitizers and respirators through the Amazon sales platform from February 15, 2020 through March 25, 2020, identify for each specific product: (a) the date of the sale; (b) the name, residence/location, and contact information of each buyer of such product; (c) the total cost paid by the buyer for each transaction, broken down by individual components.

(7) Produce all documents relating to each sale you made of hand sanitizers and respirators through the Amazon sales platform from February 15, 2020 through March 25, 2020, which identify, for each specific product: (a) the date of the sale; (b) the name, residence/location, and contact information of each buyer of such product; and (c) the total cost paid by the buyer for each transaction, broken down by individual components.

(8) Produce all documents you identified in your responses to the questions above.

Each request is specific to the items at issue. Each specifies a time frame of February 15, 2020 to March 25, 2020. This time frame enables the Attorney General to determine the proper price before declaration and potential market fluctuations (KRS 367.374(1)(4)), items having been sold at a reduced price thirty days prior to the activation of the statute (KRS 367.374(3)), and whether these items were sold by Petitioner before the emergency declaration (KRS 367.374(4)). The information sought with the CID is all within the authority of the Attorney General to request and is, at the very least, reasonably relevant to its current investigation.

Petitioner argues that the CID is overly broad in requesting information regarding out-of-state sales. But, Petitioner's argument ignores KRS 367.374, which makes it clear that it covers not only actual sales but also the offering for sale of the specific goods listed in the statute. Because

8

Petitioner offered its product for sale through the Amazon platform, *even the items that were eventually sold out-of-state were also offered to be sold to Kentucky residents.*

Petitioner finally contends that Amazon controls certain aspects of its pricing. Because Petitioner has not yet responded to the CID, the Attorney General cannot confirm whether Petitioner's prices are uniform throughout the country. At this initial stage, information related to sales of respirators and hand sanitizers both in Kentucky and outside Kentucky is reasonably relevant to the current investigation.

### III. Kentucky's Price Gouging Laws Are Constitutional and Do Not Violate the Dormant Commerce Clause

Petitioner next argues that Kentucky's price gouging laws are unconstitutional as applied to it pursuant to the dormant Commerce Clause. This argument also fails.

"The Commerce Clause provides that the Congress shall have Power to regulate Commerce among the several States." *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*, 511 U.S. 93, 98 (1994) (quoting Art. I, § 8, cl. 3). Despite its name, the so-called "dormant commerce clause" is nowhere found in a clause to the United States Constitution. *Tyler Pipe Indus., Inc. v. Wash. State Dep't of Revenue*, 483 U.S. 232, 265 (1987) (Scalia, J., dissenting) ("[T]he Court for over a century has engaged in an enterprise that it has been unable to justify by textual support[.]"). Regardless, the dormant Commerce Clause "denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Or. Waste Sys., Inc.*, 511 U.S. at 98.

Accordingly, states may not engage in "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Id.* at 99. On the other hand, "nondiscriminatory regulations that have only incidental effects on interstate commerce are valid unless the burden imposed on such commerce is clearly excessive in relation to the putative local

9

benefits." *Id.* (*citing Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). Despite the negative thrust of the Commerce Clause, the Supreme Court has recognized that "the Framers' distrust of economic Balkanization was limited by their federalism favoring a degree of local autonomy." *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 338 (2008) (citing The Federalist Nos. 7 (A. Hamilton), 11 (A. Hamilton), and 42 (J. Madison), and 51 (J. Madison)).

Laws that are facially neutral might nevertheless violate the dormant Commerce Clause if "the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." *Or. Waste Sys., Inc.*, 511 U.S. at 99; *see also Pike*, 397 U.S. at 137 ("Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."). But, this is a narrower kind of claim that often involves weighing factual issues that are difficult to balance. Therefore, "[s]tate laws frequently survive this *Pike* scrutiny" because it requires high deference to a state's policy decisions. *Dep't of Revenue of Ky.*, 553 U.S. at 339; *see also Tenn. Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 450 (6th Cir. 2009) (explaining that any challenge under *Pike* must demonstrate that the burden on interstate commerce is "clearly excessive") (*quoting C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 390 (1994)).

Kentucky's price gouging statutes make no distinction between in-state and out-of-state entities. Petitioner is a Kentucky limited liability company selling items in Kentucky (and nationwide) through the Amazon platform. There is no argument that the application of a price gouging statute to items sold in Kentucky by a Kentucky limited liability company to a Kentucky customer would be an unconstitutional benefit for in-state economic interests while burdening out-

Filed          20-CI-01252     05/05/2020          Vincent Riggs, Fayette Circuit Clerk

of-state competitors. Thus, Petitioner presumably bases its argument upon items it offers for sale to out of state customers.

Kentucky's price gouging statutes do not distinguish between in-state and out-of-state sellers. Any entity *offering to sell* certain goods in Kentucky during the period of time the price gouging statutes are activated are subject to the provisions of the statute. Whether the seller is selling through Amazon, another website, or a physical location, there will clearly be "incidental effects" on interstate commerce with a statute that is designed to prevent certain price increases. This incidental effect does not, however, render the statute unconstitutional as applied to Petitioner.

Furthermore, the United States District Court for the Eastern District of Kentucky has specifically applied the dormant Commerce Clause to Kentucky's price gouging statutes and found no constitutional violations. In *Marathon Petroleum Co. LLC v. Stumbo*, 528 F.Supp.2d 639 (E.D. Ky. 2007), the Court addressed Governor Fletcher's activation of Kentucky's price gouging statutes in response to Hurricane Katrina. Governor Fletcher specifically activated the price gouging statutes to prevent the illegal inflation in the price of gasoline. Following an investigation, the Attorney General filed suit against Marathon for selling gasoline grossly in excess of its pre-emergency prices and unrelated to any increase in costs. *Id.* at 643. Marathon argued that Kentucky's price gouging statutes were unconstitutional as applied to it based on, among other provisions, the dormant Commerce Clause. *Id.* The Court dismissed Marathon's argument in full, finding "no basis for determining that the statute patently violates the dormant Commerce Clause." *Id.* at 650.

Marathon sells its gasoline nationwide, but was still subject to Kentucky's price gouging statutes. Similarly, Petitioner's decision to sell its products on Amazon to reach a nationwide market does not exempt it from Kentucky's price gouging statutes.

Put simply, Kentucky's price gouging statutory scheme does not directly regulate offerings or transactions that take place outside of Kentucky. There is thus no violation of the dormant Commerce Clause, and Petitioner's argument to the contrary must fail.

### IV. Petitioner's Request for Extension of Time

The Attorney General served Petitioner with the CID on March 25, 2020. Petitioner did not respond to the CID until April 10, 2020, at which time it sought an extension of time in which to respond. The Attorney General proposed a rolling production that would have given Petitioner until May 1, 2020 to respond to the CID. Remarkably, Petitioner now claims this attempt to provide a reasonable extension while continuing to move forward with the investigation showed "extreme indifference" and requests reasonable attorneys' fees and court costs for filing this Petition.

This request must be summarily denied. First, Petitioner sets forth no authority to support sanctions here. Second, Petitioner's request demonstrates an astonishing callousness to Kentucky citizens and consumers, all of whom are living through a global pandemic, and who deserve the right to have medical and emergency supplies offered for sale in a manner that complies with Kentucky law and public policy.

### CONCLUSION

**WHEREFORE**, for the reasons set forth in this Memorandum, the Attorney General respectfully request that Petitioner be ordered to comply fully with the Attorney General's lawfully issued CID.

Respectfully submitted,

DANIEL CAMERON
ATTORNEY GENERAL

*/s/ J. Christian Lewis*
_____
J. Christian Lewis
Justin D. Clark
Matthew C. Cocanougher
Office of Consumer Protection
Kentucky Office of the Attorney General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
Tel:     (502) 696-5300
christian.lewis@ky.gov
justind.clark@ky.gov
matthew.cocanougher@ky.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this the 5th day of May 2020, a true and accurate copy of the foregoing Motion to Enforce Civil Investigative Demand was filed electronically with the Court's CourtNet e-filing system and conformed copies of same were served electronically on the Petitioner.

*/s/ J. Christian Lewis*