COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CIVIL ACTION NO. 20-CI-1252
DIVISION 9

JONES & PANDA, LLC                                                                                    PETITIONER

V.     **FIRST AMENDED PETITION TO SET ASIDE
THE CIVIL INVESTIGATIVE DEMAND AND TO PROTECT PETITIONER
FROM AN UNREASONABLE AND UNCONSTITUTIONAL INVESTIGATION,
OR IN THE ALTERNATIVE,
TO MODIFY THE CIVIL INVESTIGATIVE DEMAND
AND EXTEND THE RETURN DATE**

COMMONWEALTH OF KENTUCKY,
ex rel. DANIEL CAMERON, in his Official Capacity
as ATTORNEY GENERAL OF KENTUCKY                                                     RESPONDENT

   **Serve:** Via Certified Mail/Return Receipt
              Daniel Cameron, in his Official Capacity
              as Attorney General of Kentucky
              1024 Capital Center Drive, Suite 200
              Frankfort, KY 40601

\*\*\*\*\*\*\*\*\*\*\*\*

Pursuant to KRS 367.240(2) and 367.260, Jones & Panda, LLC ("Jones & Panda") hereby petitions the Court to set aside the Civil Investigative Demand issued by Daniel Cameron, Attorney General of Kentucky, on March 25, 2020 and directed to: Jones & Panda, LLC c/o Sarah Elizabeth Jones and to enter an appropriate order to protect Jones & Panda from an unreasonable investigative action and to find the Attorney General's application of Kentucky's price gouging statutes to Jones & Panda violates the United States Constitution.  Alternatively, Jones & Panda petitions the Court to modify the Civil Investigative Demand and to extend the return date pursuant

1

to KRS 367.240(2). In support of this Petition, Jones & Panda states that good cause for this Petition exists, as follows:

**I.    BACKGROUND**

Jones & Panda is a limited liability company organized in Kentucky whose sole member is Sarah Elizabeth Jones. As a sole proprietor, Sarah Jones ("Jones") operates Jones & Panda as a third-party merchant on Amazon's national eCommerce retail store. Essentially, Jones purchases products from retail stores in Kentucky and other states and offers them for sale on Amazon's website. In addition to the retail price she paid for the products, Jones incurs additional expenses related to her time, travel and shipping of the products ordered by Amazon's customers.

Due to the COVID-19 health crisis, on March 6, 2020 Kentucky Governor Andy Beshear issued an Executive Order declaring a state of emergency in the Commonwealth and activated the Commonwealth's price-gouging laws at KRS 367.372 to 367.368 (the "Act"). Pursuant to KRS 367.474(1)(a), the Act is implemented for a period of fifteen days. The Governor renewed activation of the Act by his March 20, 2020 Executive Order, as allowed by KRS 367.374(2).

On March 25, 2020, the Respondent, Daniel Cameron, Attorney General of Kentucky, issued a Subpoena and Civil Investigative Demand In Re Investigation of: Complaints of Price Gouging to Jones, the registered agent of Jones & Panda. *See* Subpoena and Civil Investigative Demand (hereinafter, the "CID"), attached as Exhibit "1". As grounds for the investigation, the CID states: ". . .the Attorney General of Kentucky, having reason to believe that a person has engaged in, is engaging in, or is about to engage in any act or practice declared to be unlawful by KRS 367.110 to 367.300 or KRS 367.372 to 376.378, and that it is in the public interest that an investigation should be made. . . ." The letter accompanying the CID, from Assistant Attorney General Matthew Cocanougher, further states that the "Kentucky Office of the Attorney General

(KOAG) has received information from Amazon relating to the prices charged, during the ongoing state of emergency for respirators and hand sanitizers offered for sale on its platform by a third-party seller identified as A9DC8NLML6D8C, with a store front name of Jones & Panda, LLC." *See* Letter dated March 25, 2020, attached as Exhibit "2". The CID requires Jones & Panda to respond to Eight Requests related to its purchases and sales of hand sanitizers and respirators from February 15, 2020 through March 25, 2020.

The Requests are as follows:

1. Identify, by day and each specific product, the price you charged for hand sanitizers and respirators, offered for resale on the Amazon sales platform from February 15, 2020 through March 25, 2020.

2. State the basis behind every price change you made to hand sanitizers and respirators, offered for resale on the Amazon sales platform from February 15, 2020 through March 25, 2020. For each price increase that you contend was related to an increase in your cost, describe the nature of such increase, and identify all documents that substantiate your claim.

3. Produce all documents relating to your purchases and sales of hand sanitizers and respirators, offered for resale on the Amazon sales platform from February 15, 2020 through March 25, 2020.

4. Produce all documents relating to the supply and demand of hand sanitizers and respirators, offered for resale on the Amazon sales platform from February 15, 2020 through March 25, 2020, including correspondence, recordkeeping and any sources you relied on in making pricing decisions during that period.

5. Produce all documents relating to the retail prices you charged for hand sanitizers and respirators, offered for resale on the Amazon sales platform from February 15, 2020 through March 25, 2020, including any documents upon which you rely to justify any price increases that may have occurred.

6. For each sale you made of hand sanitizers and respirators through the Amazon sales platform from February 15, 2020 through March 25, 2020, identify for each specific product: (a) the date of the sale; (b) the name, residence/location, and contact information of each buyer of such product; (c) the total cost paid by the buyer for each transaction, broken down by individual components.

   7. Produce all documents relating to each sale you made of hand sanitizers and respirators through the Amazon sales platform from February 15, 2020 through March 25, 2020, which identify, for each specific product: (a) the date of the sale; (b) the name, residence/location, and contact information of each buyer of such product; and (c) the total cost paid by the buyer for each transaction, broken down by individual components.

   8. Produce all documents you identified in your responses to the questions above.

The CID further requires: That, under oath or affirmation, you answer the following requests and produce the following documents at the time and place above, or if blank, then by emailing them together with a completed sworn statement of authenticity and completeness of documents, by no later than, **April 15, 2020**.

## II. ARGUMENT

Jones & Panda now petitions this Court to set aside the CID pursuant to KRS 367.240(2), and to enter an appropriate order to protect Jones & Panda from an unreasonable investigation pursuant to KRS 367.260. As good cause for its Petition, Jones & Panda contends: first, that the CID is an arbitrary order that does not meet the requirements of KRS 367.240(1); and second, that Kentucky's price-gouging statutes, when applied to one of Amazon's third-party merchants like Jones & Panda, is unconstitutional. Should the Court decline to set aside the CID, then Jones & Panda contends that the CID is overly broad, unduly burdensome, and not properly limited in temporal scope, thereby requiring modification as set forth below. Finally, should the Court decline to set aside the CID, Jones & Panda requests additional time to respond.

  **A.** **THE CID IS AN ARBITRARY ORDER THAT FAILS TO MEET THE REQUIRED STATUTORY STANDARD AND CONSTITUTES AN UNREASONABLE INVESTIGATION.**

The authority of the Attorney General to issue a civil investigative demand is found in KRS 367.240(1), which provides as follows:

**4**

> When the attorney general has reason to believe that a person has engaged in, is engaging in, or is about to engage in any act or practice declared to be unlawful by KRS 367.110 to 367.300, or when he believes it to be in the public interest that an investigation should be made to ascertain whether a person in fact has engaged in, is engaging in or is about to engage in, any act or practice declared to be unlawful by KRS 367.11 to 367.300, he may execute in writing and cause to be served upon any person who is believed to have information, documentary material or physical evidence relevant to the alleged or suspected violation, an investigative demand . . . .

KRS 367.240(1). While the statute does not provide a standard for determining when facts satisfy the two conditions precedent to the issuance of any civil investigative demand, Kentucky courts have considered this issue and provided important guidance.

It is clear the Attorney General does not have unbridled authority to issue a civil investigative demand, and that "courts [will] look behind the demand" to protect individual rights. *See Ward v. Commonwealth*, 566 S.W.2d 426, 428 (Ky.App. 1978). *Ward* explained that "[j]udicial review of administrative rulings is a basic part of our legal system and is designed to protect against mistaken or arbitrarily issued investigative orders." *Id*. In the case of civil investigative demands, courts must "review the conclusions of the Attorney General so as to protect against arbitrary or mistaken issuance of investigative demands." *Id*. at 429.

*Ward* sets a high bar for judicial approval of a civil investigative demand. "[T]he facts [of an alleged violation] must be established *before* the demand is issued. To use the demand as a means of establishing [the basis for the demand] flies in the face of the legislative purpose of the Consumer Protection Act." *Id*. at 428-29 (emphasis added). In other words, a civil investigative demand cannot be used as a means of establishing either of the two conditions precedent – that the Attorney General has reason to believe that a violation is being committed and that the public interest requires investigation into potential violations. *Id.* at 428-29. Simply, the Attorney General may not use the CID to fish for possible violations or to satisfy a statutory prerequisite.

5

Here the March 25, 2020 letter accompanying the CID provides that "the Kentucky Office of the Attorney General (KOAG) has received information from Amazon relating to the prices charged during the ongoing state of emergency for respirators and hand sanitizers offered for sale on its platform by a third-party seller . . . with a store front name of Jones & Panda." *See* Exhibit 2. This is the only support cited for the issuance of the CID. While Courts have not required a CID to state a reason for issuance on its face, "under KRS 367.240(2) and 367.260, after the filing of a complaint . . . , it is the duty of the court to examine the documentation and facts upon which the Attorney General based his decision to issue the demand." *Ward*, 566 S.W.2d at 429. When reviewing a similar CID after the filing of petition pursuant to KRS 367.240(2), the court in *Ward* found that the reliance on one letter alone was insufficient to satisfy either of the statutes prerequisites. *Id*. at 429.

Furthermore, the fact that it is Amazon that has complained to the Kentucky Attorney General is a distorted attempt to shift blame to hard working Kentuckians like Sarah Jones. It is Amazon that is the store. Third-party merchants, like Jones & Panda, are simply the suppliers of Amazon's store. When customers buy products supplied by Jones and Panda, the customer is Amazon's customer. Amazon is the sole party in privity of contract with its customer, and the business services agreement specifically states that there is no agency relationship between Amazon and its third-party merchants. In fact, Amazon's Business Solutions Agreement expressly forbids its third-party merchants from soliciting their customers. When checking out, customers utilize Amazon's shopping cart, the online equivalent of a cash register, regardless of whether the goods are offered for sell by Amazon, its third-party merchants, or a mix of two in the same shopping cart transaction.

Amazon retains ultimate control of the price ceiling and price floor. Amazon could have prevented any alleged price gouging by blocking automatic reprice software that automatically re-prices a product as the market conditions change. Furthermore, it is Amazon, not Jones & Panda, that sets the return policy, handles all customer service disputes, sets pricing policies, suspends selling activities, charges the customer's credit card, withholds funds for a period of time after the goods were delivered. E-mails sent to customers after a purchase of any good, whether supplied by Amazon or a third-party merchant like Jones & Panda say thank you for shopping with Amazon.

Certainly, it was in Amazon's best interest to allow high-priced goods to be sold to a panicked public, earn the higher commission, then shift the blame to the third-party merchants. If anyone is guilty of price-gouging, it is Amazon, not Jones & Panda.

Furthermore, as a national eCommerce store, Amazon's customers are worldwide. Jones & Panda, as a third-party merchant, had no ability to control the location of Amazon's customers purchasing their products. In fact, a preliminary review of Jones & Panda's sales of hand sanitizers and respirators occurring on or after March 6, 2020 suggests the vast majority of these sales occurred to customer's located outside of Kentucky. Investigative action with respect to Jones & Panda's sales outside the state of Kentucky is certainly unreasonable, as well as unconstitutional, as described below.

As a result, this Court must "review the conclusions of the Attorney General so as to protect against arbitrary or mistaken issuance of investigative demands." *Id.* at 429. *See also Commonwealth v. Pineur*, 533 S.W.2d 527 (1976). Accordingly, Jones & Panda respectfully requests the Court to require the Attorney General to come forward with evidence sufficient to satisfy the statutory prerequisites, or the CID must be set aside as arbitrary.

**B.     THE ATTORNEYS GENERAL'S APPLICATION OF KENTUCKY'S PRICE GOUGING LAWS TO JONES & PANDA IS UNCONSTITUTIONAL.**

The CID at issue in this case is based on the Commonwealth's price-gouging laws set forth in KRS 367.170 to 367.300 and KRS 367.372 to 367.378.  The Attorney General's application of KRS 367.374 and KRS 367.170 to Amazon's third-party merchants like Jones & Panda violates important provisions of the United States Constitution, including the dormant Commerce Clause, the First Amendment, the Due Process Clause, and the Equal Protection Clause.

Article 1, Section 8 of the U.S. Constitution allocates the "Power . . . To regulate Commerce . . . among the several states," U.S. Const. art. 1, § 8, cl. 3, to the federal government.  A direct corollary to this express allocation is a constraint on the power of any state to enact legislation that interferes with or burdens interstate commerce.  This doctrine, known as the "dormant" commerce clause, is "driven by concern about economic protectionism" and seeks to prevent state "regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Dep't of Revenue of Ky v. Davis*, 553 U.S. 328, 337-38 (2008).  Essentially, a state may not regulate commerce occurring wholly outside of its borders.  *Healy v. Beer Inst.*, 491 U.S. 324, 335-36 (1989); *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 582-83 (1986). *Edgar v. MITE Corp.*, 457 U.S. 624, 642-43 (1982)(plurality opinion).  The principle reflects the Constitution's special concern both with the maintenance of a national economic union unfettered by state-imposed limitations on interstate commerce and with the autonomy of the individual States within their respective spheres."  *Healy*, 491 U.S. at 335-36 (footnote omitted).

As a third-party merchant on Amazon, Jones & Panda is not given the option to price commodities on a state by state basis, only the ability to offer their goods nationally via Amazon's eCommerce store.  By applying Kentucky's price-gouging laws to a merchant such as Jones &

8

Panda that sells in interstate commerce via national eCommerce web stores such as Amazon, it creates an undue burden on interstate commerce, because the law is restricting the ability of that seller to engage in transactions in other states, as the seller does not have the ability to choose what markets to sell to, nor do they have the ability to set a price based on each state's law – only Amazon can do that.

The Attorney General recognizes the extraterritorial application of the Commonwealth's price-control laws in this setting, but defies the Supreme Court's rejection of that practice. The Attorney General's "Emergency Motion" specifically argues that KRS 367.374 applies to "even [to] items that were eventually sold out-of-state" because they "were also offered to be sold to Kentucky residents."[1] That is flatly unconstitutional.

Certainly, it was in Amazon's best interest to allow high-priced goods to be sold to a panicked public, earn the higher commission, then shift the blame to the third-party merchants. If anyone is guilty of price-gouging, it is Amazon, not Jones & Panda.

In addition to violating the dormant Commerce Clause, the Attorney General's application of KRS 367.374 and KRS 367.170 to Jones & Panda also violates the First Amendment. Essentially, the Attorney General is burdening commercial speech that is lawful outside of Kentucky, by imposing an excessive burden on speech in Kentucky that is not tailored to actually accomplish a substantial interest. *See Sorrell v. IMS Health, Inc.,* 564 U.S. 552 (2011); *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.* 447 U.S. 557 (1980). Furthermore, KRS 367.374 and KRS 367.170 are unconstitutionally vague, and fail "to give ordinary people fair notice of the conduct [they] punish[], or so standardless that [they] invite arbitrary

---

[1] Motion at 8-9.

9

enforcement." *Shuti v. Lynch*, 828 F.3d 440, 443 (6th Cir. 2016)(quoting *Johnson v. United States,* ___ U.S. ___, 135 S.Ct. 2551, 2556 (2015).

Finally, the Attorney General's selective application of KRS 367.374 and KRS 367.170 violates the Equal Protection Clause because the Attorney General is targeting individual online merchants like Jones & Panda while apparently taking a light-touch approach with Amazon. Such unequal regulation burdens Jones & Panda's fundamental rights, and implicates the heightened scrutiny standard. *See Kiser v. Kandmar,* 831 F.3d 784, 792 (6th Cir. 2016).

For these reasons, Jones & Panda respectfully requests that the Court find that the CID issued to Jones & Panda violates the dormant Commerce Clause, the First Amendment, the Due Process Clause, and the Equal Protection Clause and, as a result, set aside the CID as unconstitutional.

### C. THE CID IS OVERLY BROAD, UNDULY BURDENSOME AND NOT PROPERLY LIMITED IN TEMPORAL SCOPE.

Should the Court decline to set aside the CID, then Jones & Panda contends that good cause exists to modify the CID pursuant to KRS 367.240(2), as it is overly broad, unduly burdensome and not properly limited in temporal scope in light of the relevant price-gouging laws. The state of emergency was declared by Governor Beshear on March 6, 2020, thereby activating the Commonwealth's price-gouging laws, KRS 367.372 to 367.368 (the "Act"). The Act states, in relevant part, as follows:

> No person shall sell, rent, or offer to sell or rent, regardless of whether an actual sale or rental occurs, a good or service listed in this paragraph . . . for a price which is grossly in excess of the price prior to the declaration and unrelated to any increased cost to the seller. . . .

KRS 367.374(1)(b). The Act further provides that "[a] person's price does not violate this subsection if it is:

    (1) Related to an additional cost imposed by a supplier of a good or other costs of providing the good or service, including an additional cost for labor or materials used to provide a service;

    (2) Ten percent (10%) or less above the price prior to the declaration;

    (3) Ten percent (10%) or less above the sum of the person's costs and normal markup for a good or service;

    (4) Generally consistent with fluctuations in applicable commodity, regional, national, or international markets, or seasonal fluctuations; or

    (5) A contract price, or the result of a price formula, established prior to the order implementing this subsection."

Whether a price violates this section is a question of law. KRS 367.374(1)(d). Importantly, in the definitions of the act, KRS 367.372(10) defines "Price prior to the declaration," as "the person's price for a good or service on the day before the date of the Governor's order implementing the provisions of KRS 367.374.

  The eight Requests contained in the CID, however, require Jones & Panda to provide information and documents related to Jones & Panda's sales of hand sanitizers and respirators over an extended period – February 15, 2020 through March 25, 2020. On initial review, Jones & Panda had 1,200 sales of hand sanitizers during that time frame, but only approximately 91 sales after declaration of the state of emergency on March 6, 2020. With respect to respirators, Jones & Panda had 575 sales during the requested time frame, but only approximately 108 sales after declaration of the state of emergency on March 6, 2020. Any sales of hand sanitizers and respirators before March 6, 2020, would be irrelevant and overly broad, except to the extent necessary to prove the "price prior to the declaration." As such, the CID should be modified to reflect the time frame March 6, 2020 through March 25, 2020, and any sales which would establish "the price prior to the declaration."

11

Additionally, the CID contains to no authority for the Kentucky Attorney General to investigate sales of any products outside of Kentucky. Thus, to the extent the CID requires Jones & Panda to provide information and documents related to Jones & Panda's sales of hand sanitizers and respirators to customers outside of Kentucky, it is unreasonably and overly broad. As such, the CID should be further modified to request information related to sales of hand sanitizers and respirators to customers in Kentucky.

### D.  SHOULD THE COURT DECLINE TO SET ASIDE THE CID, JONES & PANDA REQUESTS ADDITIONAL TIME TO RESPOND.

In light of the current state of emergency related to COVID-19, the undersigned counsel for Jones & Panda contacted Matthew Cocanougher, Assistant Attorney General, on Friday, April 10, 2020 to request an extension of time to respond to the CID. Counsel for Jones & Panda advised Assistant Attorney General Cocanougher that due to COVID-19 restrictions, she was unable to meet in person with her client. Additionally, counsel advised that a preliminary review of documents revealed that Jones & Panda made over 1,500 separate sales of hand sanitizers and respirators from February 15, 2020 through March 25, 2020, thereby requiring a significant time to process and review. As a result, counsel requested until May 31, 2020 to respond to the CID.

In response, Counsel for Jones & Panda was subsequently advised by e-mail of the following extension with a rolling production of documents, as follows: provide the total number of transactions by April 15; and provide 1/3 of your client's responses each week between next week and May 1, 2020.

As Jones & Panda has elected to file this Petition pursuant to KRS 367.240(2) and 367.260, good cause exists to extend the time for Jones & Panda to respond. Until such time as the Court has an opportunity to determine whether the Attorney General's CID satisfies the statutory prerequisites, and to review the additional challenges to the CID, Jones & Panda respectfully

requests that the Court extend the time to respond to the CID until 30 days after the conclusion of this proceeding or 30 days after the expiration of the state of emergency, whichever occurs later.

### III. CONCLUSION

Pursuant to KRS 367.240(2) and KRS 367.260, Jones & Panda respectfully requests that the Court require the Attorney General to produce documentation and facts upon which he based his decision to issue the CID, allow the parties to brief this issue, and then to set this matter for a hearing. Alternatively, Jones & Panda respectfully requests that the Court set aside the CID as unconstitutional, or modify the CID as set out above and extend the return date as requested above. Jones & Panda further requests that it be awarded its reasonable attorneys' fees and court costs in having to file this Petition in light of the constitutional violations committed by the Attorney General and his extreme indifference in failing to provide a reasonable extension to responding to the Requests given the COVID-19 health emergency.

        Respectfully submitted,

        /s/ Mason Moore Kessinger
        Benjamin Lee Kessinger, III
        Mason Moore Kessinger
        KESSINGER LAW GROUP, PLLC
        120 Kentucky Avenue, Suite 220
        Lexington, KY 40502
        T. (859) 253-2105
        F. (877) 747-9184
        Lee@KessingerLaw.com
        Mason@KessingerLaw.com
        ATTORNEYS FOR PETITIONER