UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT FRANKFORT

*Electronically filed*

| | |
|---|---|
| ONLINE MERCHANTS GUILD,<br><br>    *Plaintiff*<br><br>v.<br><br>DANIEL CAMERON, in his official capacity as ATTORNEY GENERAL OF KENTUCKY,<br><br>    *Defendant* | Civil Action No. 3:20-cv-00029<br>Judge Gregory F. Van Tatenhove |

**THE ATTORNEY GENERAL'S RESPONSE IN OPPOSITION TO PLAINTIFF ONLINE MERCHANT GUILD'S MOTION FOR VOLUNTARY DISMISSAL**

The Attorney General opposes the Online Merchants Guild's (the "Guild") Motion for Voluntary Dismissal without prejudice because it is a clear attempt to circumvent the Sixth Circuit's ruling on appeal. That decision dictates a dismissal of the Guild's extraterritoriality claim under the Dormant Commerce Clause. For that reason, as well as others outlined in this response, the Attorney General (as well as all Kentucky citizens whose interests he represents) would suffer "plain legal prejudice" if this case were dismissed without prejudice. The Guild's motion should thus be denied or granted only on the condition that all claims be dismissed *with* prejudice.

### I. INTRODUCTION AND BACKGROUND

Since the Guild filed its complaint a year and a half ago, Attorney General Cameron has exerted significant effort vigorously defending Kentucky's price-gouging laws from the Guild's meritless constitutional challenge. That effort included contesting the Guild's motion for a

1

temporary restraining order and preliminary injunction (which included extensive briefing and multiple hearings before the Court), briefing the separate but related issue of abstention, and appealing this Court's preliminary injunction order to a favorable result. On appeal, the Sixth Circuit not only vacated the preliminary injunction, finding "no extraterritoriality problem" with Kentucky's price-gouging laws, but it also cast serious doubt as to the continued viability of the Guild's legal theory under *Pike* balancing. It did so by directing this Court to two of its precedents for the express purpose of performing *Pike* balancing. And in both of those cases, the challenger's Dormant Commerce Clause claim under *Pike* failed.

Both during and after the appeal, the Attorney General continued vigorously defending Kentucky's laws. He answered the complaint, exchanged initial disclosures, served written discovery, and filed a comprehensive motion for judgment on the pleadings seeking dismissal of the Guild's entire case. Yet, now, a year and a half into this case and with less than three months before fact discovery closes, the Guild wants to withdraw from the field, perhaps to fight another day. It wants to dismiss a case that it initially maintained was essential to clarify its members' responsibilities under Kentucky law and that was in "the best interests of our nation." The Guild should not be permitted to so easily avoid the binding effects of the Sixth Circuit's ruling on appeal. Allowing it do so now through a dismissal without prejudice would be unfair to the Attorney General and the citizens of the Commonwealth, whose interests the Attorney General is duty-bound to defend.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 41(a)(2), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). The purpose of this rule is to "protect the nonmovant from unfair treatment." *Grover by*

*Grover v. Eli Lilly and Co.*, 33 F.3d 716, 718 (6th Cir. 1994). A defendant is subject to "unfair treatment" when "the defendant would suffer plain legal prejudice as a result of a dismissal without prejudice, as opposed to facing the mere prospect of a second lawsuit." *Id.* (internal citations and quotations omitted). For instance, courts find "plain legal prejudice" when the plaintiff seeks dismissal without prejudice but "the law clearly dictates a result for the defendant." *See, e.g.*, *id.* at 719 ("At the point when the law clearly dictates a result for the defendant, it is unfair to subject him to continued exposure to potential liability by dismissing the case without prejudice.").

Separate from whether "the law clearly dictates a result," courts also weigh certain factors, known as the *Grover* factors, to determine if there is plain legal prejudice. *See Rosenthal v. Bridgestone/Firestone, Inc.*, 217 Fed. Appx. 498, 502 (6th Cir. 2007) ("Even if the law does not clearly dictate a result in favor of a defendant…there are additional factors to consider in determining whether a defendant will suffer plain legal prejudice as a result of a Rule 41(a)(2) dismissal.") (citing *Grover*, 33 F.3d at 718). The *Grover* factors include: "[1] the defendant's effort and expense of preparation for trial, [2] excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, [3] insufficient explanation for the need to take a dismissal, and [4] whether a motion for summary judgment has been filed by the defendant." *Grover*, 33 F.3d at 718.

Notably, not all of the factors need be present, nor must they weigh in equal strength in favor of the defendant, before a court can find plain legal prejudice. *See Rosenthal*, 217 Fed. Appx. at 502 ("[C]ourts need not analyze each factor or limit their consideration to these factors.") (internal citation and quotation omitted); *Brooks v. C.R. Bard, Inc.*, No. 5:19-cv-360-JMH-MAS, 2020 WL 7700094, *2 (E.D. Ky. Dec. 28, 2020) (finding that the *Grover* factors weighed "on balance" in favor of a dismissal with prejudice even though the third factor weighed against the

defendant). Should the court determine that a dismissal without prejudice is inappropriate, it retains the discretion to "deny the [Rule 41(a)(2)] motion, require that a dismissal be with prejudice, or impose any other conditions that it deems necessary." *Wellfount, Corp. v. Hennis Care Centre of Bolivar, Inc.*, 951 F.3d 769, 774 (6th Cir. 2020) (internal citation and quotation omitted).

### III. ARGUMENT

The Attorney General will suffer plain legal prejudice if the Court dismisses this case without prejudice. That is so for at least two reasons. First, "the law clearly dictates a result for [the Attorney General]" on the Guild's extraterritoriality claim. On appeal, the Sixth Circuit roundly rejected every argument the Guild could muster as to extraterritoriality, specifically finding "no extraterritoriality problem" with Kentucky's price-gouging statutes. Permitting the Guild to now dismiss its case, including the extraterritoriality claim, *without prejudice* would allow it to escape defeat when otherwise it should lose.

Second, on balance, the four *Grover* factors weigh in favor of the Attorney General and for a dismissal with prejudice of the entire action. That is, the Attorney General has spent considerable, tangible time and effort in litigating this case; there has been no explanation (let alone a sufficient one) justifying the Guild's motion; based on that missing explanation, it is unclear why (even with the parties' settlement discussions factored in) the Guild could not have moved for dismissal sooner in the case; and the Attorney General has filed the equivalent of a motion for summary judgment. Accordingly, the Court should deny the motion outright, or grant it but dismiss the case with prejudice.

> **A. The Sixth Circuit's decision clearly dictates a result for the Attorney General; therefore, a dismissal with prejudice is required.**

The Sixth Circuit's opinion vacating this Court's preliminary injunction clearly dictates that the Attorney General should prevail on the Guild's extraterritoriality claim and, therefore, that

4

claim must be dismissed with prejudice. As the Sixth Circuit has recognized, "[a]t the point when the law clearly dictates a result for the defendant, it is unfair to subject him to continued exposure to potential liability by dismissing the case without prejudice." *Grover*, 33 F.3d at 719. For instance, in *Grover*, a "determinative" question of state law was certified to the Ohio Supreme Court as part of a lawsuit in federal court. *Id.* at 717, 718. The Ohio Supreme Court answered the question and found that the plaintiffs' cause of action did not exist under state law. *Id.* at 717. Relying on that ruling, the defendant moved to dismiss the complaint with prejudice. *Id.* The district court nevertheless dismissed the case without prejudice, accepting the plaintiffs' argument that dismissal without prejudice was appropriate "in order to preserve [plaintiffs'] rights to bring an action…*at some point in the future*." *Id.* at 717-18 (emphasis added).

On appeal, the Sixth Circuit reversed, holding that the Ohio Supreme Court's binding and "determinative" decision made dismissal without prejudice inappropriate. *Id.* at 718 ("In view of the extra delay and expense experienced by defendant, and plaintiffs' defeat on the 'determinative' legal issue certified to the Ohio Supreme Court, the district court's order [dismissing without prejudice] manifestly burdened defendant with clear legal prejudice."); *id.* at 719 (noting the "binding effect" of the Ohio Supreme Court's decision). The district court was simply not permitted to "virtual[ly] disregard" the Ohio Supreme Court's decision by dismissing the case without prejudice. *Id.* at 718. As the Sixth Circuit noted, the Ohio Supreme Court had "undertake[n] a substantial burden" by answering the certified question, and "its resolution of the issue must not be disregarded." *Id.* at 719.

Here, the Sixth Circuit has issued a similarly binding and determinative ruling on the Guild's extraterritoriality claim that should not be disregarded. Binding because it constitutes the law of the case. Determinative because the Court thoroughly analyzed each and every argument

5

the Guild asserted as to extraterritoriality, and it reached the same conclusion: there is "no extraterritoriality problem" with Kentucky's price-gouging statutes. *Online Merchants Guild v. Cameron*, 995 F.3d 540, 554 (6th Cir. 2021).

First, the binding effect. The Guild may argue that because the Sixth Circuit's ruling was on a *preliminary* injunction it cannot possibly "dictate" any result at all. But the Guild would be wrong. The Sixth Circuit's treatment of a preliminary injunction order below can certainly form the basis of a successful, subsequent dispositive motion in the district court. For example, in *Daunt v. Benson*, the Sixth Circuit affirmed the district court's dismissal of the action based on a Rule 12(b)(6) motion that the defendant filed *after* the Sixth Circuit had previously upheld on appeal the district court's decision denying the plaintiff's motion for preliminary injunction. 999 F.3d 299, 309-10 (6th Cir. 2021). The Sixth Circuit explained that the lower court properly interpreted the Sixth Circuit's earlier preliminary injunction ruling as being dispositive of the plaintiff's constitutional claims and, therefore, dismissal of the action under Rule 12(b)(6) was entirely proper. *Id.* at 303, 307.

Its earlier preliminary injunction ruling was dispositive, the Sixth Circuit held, for two reasons: because the law-of-the-case doctrine applied to it and because even if that doctrine did not apply the plaintiff had not otherwise put forth any different facts or circumstances by the time of the defendant's Rule 12 motion that would warrant a different result. *Id.* at 309-10. As to the former reason, the Sixth Circuit held that the law-of-the-case doctrine applied because its preliminary injunction ruling was a "fully considered legal decision as to the constitutionality of the [challenged conduct] based on a decisionmaking process that included full briefing and argument without unusual time constraints…[and that was based on] a fully developed record." *Id.* (internal citations and quotations omitted). And as to the latter reason, there were no "new facts

material to the resolution of this case" following the Sixth Circuit's first ruling—the factual allegations at the motion to dismiss stage "mirror[ed] the factual record" before the Sixth Circuit on the first appeal. *Id.*

Here, like in *Daunt*, the Sixth Circuit's earlier order reversing the preliminary injunction entered by this Court should be afforded law-of-the case status or, at the very least, should still be interpreted as binding and determinative because no new material facts have been alleged. Law-of-the-case status applies because the Sixth Circuit "fully considered" the constitutionality of Kentucky's price-gouging statutes under the extraterritoriality doctrine, and it did so with "full briefing" and "without unusual time constraints." *Daunt*, 999 F.3d at 309. It also did so with the equivalent of a fully developed record because the Court relied "exclusively" on the Guild's factual allegations (*i.e.*, it accepted them as true). *See Online Merchants Guild*, 995 F.3d at 554 n. 1; *Daunt*, 999 F.3d at 308, 309 (finding there was a fully developed record because the operative factual allegations—which came from the plaintiffs' complaint and thus were accepted as true and construed in a light most favorable to them—were the same at both the Rule 12 stage and the time the Sixth Circuit heard the first appeal).

Even without law-of-the-case status, the Sixth Circuit's ruling in this case still leads to the same result—a dismissal with prejudice—because the Guild has not, and cannot, point to any additional material facts that would warrant a different result. *Daunt*, 999 F.3d at 309-10 ("Those allegations that Plaintiffs *did* plead [in their complaint] mirror the factual record before us in [the appeal of the preliminary injunction]…[Thus,] [e]ven without the law-of-the case doctrine in place, we would reach the same conclusion.") (emphasis in original). Therefore, there is simply no path forward for the Guild's extraterritoriality claim. It must be dismissed with prejudice.

Second, the determinative nature of the decision. As the Sixth Circuit stated no less than

7

three separate times in its decision, the out-of-state effect of Kentucky's price-gouging laws "depends entirely upon" Amazon's design decisions. *Online Merchants Guild*, 995 F.3d at 555, 559. Indeed, without Amazon, the Court held, "there would be no effect at all on interstate commerce." *Id.* at 555. The Sixth Circuit reached these determinations by assuming the truth of the Guild's allegations about how Amazon operates. *Id.* at 544 n. 1 ("The factual record regarding Amazon's functioning comes exclusively from the declaration of the Guild's executive director."). That assumption is critically important because it means that even on the Guild's best theoretical day in court—where the Guild proves Amazon operates just like the Guild says it does—its extraterritoriality claim still fails. In other words, that claim is simply not viable. And there is certainly nothing the Guild can re-plead, discover, or show *in this Court* to prove otherwise.

If there were any doubt that the Sixth Circuit's order here "clearly dictates a result," compare that order to the order in *Rosenthal v. Bridgestone/Firestone, Inc*. There, the Sixth Circuit explained that the law did not clearly dictate a result in the defendant's favor because the district court had only "expressed its tentative opinion" (in a "Proposed and Tentative Opinion" circulated to the parties ahead of oral argument) that state law would bar the plaintiff's action. *Rosenthal*, 217 Fed. Appx. at 500, 501. And in that tentative opinion the district court acknowledged that it was "not clear" whether the statute of repose under state law applied. *Id.* at 501. Here, by contrast, the Sixth Circuit's decision is neither "tentative" nor unclear. It is thorough in its analysis and direct in its holding: "But there is no extraterritoriality problem here…." *Online Merchants Guild*, 995 F.3d at 554. Accordingly, it is accurate to say that the Sixth Circuit's decision dictates a result in the Attorney General's favor.

One final point. While the Guild thinks it may have a viable extraterritoriality claim at some point "in the future," that does not tip the scales in favor of dismissing *this case* without

8

prejudice. [*See* Guild's Rule 41 Motion, DN 52, Page ID#: 723-24 para. 5 (explaining that the Guild cannot rule out a "second suit" if "there is a material change in the underlying facts and circumstances in the future")]. The plaintiffs in *Grover* asserted a similar justification for their dismissal motion, and while the district court bought it, the Sixth Circuit did not. *Grover*, 33 F.3d at 717-18 (finding that the district court decision to dismiss without prejudice, which was entered "in order to preserve [plaintiffs'] rights to bring an action…at some point in the future" was an abuse of discretion). Dismissal with prejudice *right now*, as opposed to some uncertain point in the future in a separate lawsuit, is therefore appropriate.

All told, the extraterritoriality claim must be dismissed with prejudice and, therefore, the entire action should be dismissed with prejudice. *See Letherer v. Alger Grp., LLC*, 328 F.3d 262, 266 (6th Cir. 2003) ("Rule 41 is confined to the Dismissal of Actions…'the word action as used in the Rules denotes the entire controversy….'") (quoting *Philip Carey Mfg. Co. v. Taylor*, 286 F.2d 782, 785 (6th Cir.1961)), *overruled on other grounds by Blackburn v. Oaktree Capital Mgmt., LLC*, 511 F.3d 633, 636 (6th Cir. 2008). Anything less would be an abuse of discretion. *Grover*, 33 F.3d at 718.[1]

---

[1] Even if the Court were to believe under the analysis in this Section III(A) that it had the discretion under Rule 41 to dismiss less than all of the Guild's claims or to dismiss some claims with prejudice and others without, the Court should decline to exercise that discretion. *See EQT Gathering, LLC v. A Tract of Prop. Situated in Knott Cty., Ky.*, No. CIV.A. 12-58-ART, 2012 WL 3644968, at *3 (E.D. Ky. Aug. 24, 2012) (stating that one interpretation of the Sixth Circuit's decision in *Banque de Depots v. National Bank of Detroit*, 491 F.2d 753 (6th Cir.1974) could be that a court has discretion to dismiss less than the entire action as, in the words of Rule 41, one of the "terms" of dismissal). That is because, for reasons explained in Section III(B), an analysis of the *Grover* factors provides an independent basis under Rule 41 to dismiss all of the Guild's claims (*i.e.*, the Guild's entire action) with prejudice. *See Rosenthal*, 217 Fed. Appx. at 502 ("Even if the law does not clearly dictate a result in favor of a defendant…there are additional factors to consider in determining whether a defendant will suffer plain legal prejudice as a result of a Rule 41(a)(2) dismissal.") (citing *Grover*, 33 F.3d at 718). Alternatively, the Court could also outright deny the Guild's Rule 41 motion and dismiss all of the Guild's claims through a ruling on the Attorney General's Rule 12 motion. *See Dunlap v. Sevier County, Tennessee*, 2021 WL 3123914, *3, 6, 9 (6th Cir. 2021) (holding the district court properly denied the plaintiff's Rule 41 motion and ruled instead on the defendant's pending summary judgment motion). The Attorney General submits that regardless of the path taken, dismissal *with prejudice* is appropriate.

**B. The *Grover* factors weigh in favor of a dismissal with prejudice.**

Separate and apart from whether the law clearly dictates a result for the Attorney General (and it does), the *Grover* factors, collectively, also support a dismissal of this action with prejudice.

**1. Effort and expense in preparation for trial.**

As to the first factor, the Attorney General has spent considerable time and effort in this lawsuit defending Kentucky's price-gouging statutes from the Guild's "complex constitutional claims." [Guild's Rule 41 Motion, DN 52, Page ID: 725 para. 9]. And he has the battle scars to prove it. Over the Attorney General's objections, and after multiple rounds of briefing and argument before this Court, the Guild initially prevailed on its Motion for Preliminary Injunction. It obtained an order broadly enjoining the Attorney General, in the midst of a global pandemic, from "applying KRS § 367.170 and KRS § 367.374, including by subpoena, investigation, or prosecution, to Amazon suppliers in connection with offers or sales on Amazon." [Order, DN 36 Page ID#: 487]. That meant the Attorney General could take no action at all as to those identified entities (Guild members or not), and all investigations that were then pending were put on hold. Thus, the Attorney General had every reason to fight as hard as he has in this case—especially because he represents not only his Office's interests in this case but also the interests of all the Commonwealth's citizens. And those citizens have a vested interest in having their duly-enacted statutes defended against constitutional attack. *See Commonwealth ex rel. Beshear v. Commonwealth Off. of the Governor ex rel. Bevin*, 498 S.W.3d 355, 362 (Ky. 2016) ("Indeed, the Attorney General has not only the power to bring suit when he believes the public's legal or constitutional interests are under threat, but appears to have even the duty to do so.").

Following that ruling, the Attorney General promptly appealed to the Sixth Circuit and, after thorough briefing and oral argument, ultimately obtained an order vacating the preliminary

10

injunction. Since then, the Attorney General has invested additional resources to see this case through: he answered the complaint, exchanged initial disclosures, served written discovery, and filed a comprehensive Rule 12(c) motion. At the very least, these efforts are on par with the "modest but still tangible" efforts the Sixth Circuit has recently found weighed in a defendant's favor under the first *Grover* factor. *See Dunlap*, 2021 WL 3123914, *6 (affirming the lower court's dismissal with prejudice, in part, because under the first *Grover* factor the defendant's efforts—serving initial disclosures, submitting a final witness list, moving for summary judgment, and responding to procedural motions—were "modest but still tangible"); *cf. Malibu Media, LLC v. Redacted*, 705 Fed. Appx. 402, 407 (6th Cir. 2017) (weighing the first *Grover* factor against the defendant because "any excessive energy spent on motions practice was the result of [defendant's] own litigation tactics."). As a result, this first factor weighs in favor of the Attorney General.

2. **Excessive delay and lack of diligence.**

The second factor also leans toward the Attorney General. Without an adequate explanation for the need for dismissal (discussed below), it is unclear why the Guild could not have moved to dismiss much sooner. Yes, the Guild and the Attorney General did engage in good-faith settlement discussions following the appeal, but that should not in and of itself preclude a finding against the Guild on this factor. It remains true that the Guild's motion to dismiss comes *after* the Attorney General's motion for judgment on the pleadings[2] and with only approximately three months before the fact discovery deadline in this case. [Scheduling Order, DN 47 (setting a January 17, 2022

---

[2] The Guild seemingly criticizes the timing of the Attorney General's Rule 12 motion, calling it "tactical." [Guild's Motion, DN 52, Page ID#: 725 para. 9]. But there is nothing improper about that motion. It was filed after the Guild's last settlement offer, which was not only unacceptable to the Attorney General but also indicative that the parties were not close on terms. As a result, and in light of looming court-imposed deadlines that the Attorney General had a duty to meet, he pressed the case forward by filing a Rule 12 motion and serving written discovery.

deadline)]. Given this timing, this factor as a whole tips toward the Attorney General.

### 3. Explanation for the dismissal.

The Guild appears not to have explained at all, let alone sufficiently, why a dismissal is needed in the first place. For that reason alone this third *Grover* factor also weighs in the Attorney General's favor. *See, e.g.*, *Allen v. Abbott Laboratories*, No. 11–146–DLB, 2012 WL 10508, *7 (E.D. Ky. Jan. 3, 2012) (finding the third *Grover* factor to "weigh heavily in Defendant's favor" when the plaintiff had "not put forth any facts in support of their position that dismissal without prejudice would be suitable"). To be sure, the Guild gives reasons why the dismissal should be without prejudice—because it won its jurisdictional standing argument on appeal; without prejudice is the default position under Rule 41; and in general there is a "preference for deciding controversies on their merits"—but those reasons do not answer why dismissal itself, with our without prejudice, is needed in the first place. [Guild's Rule 41 Motion, DN 52, Page ID#: 723-25, paras. 4, 5, 8].

And on that specific question, the Guild is seemingly silent. That silence is all the more puzzling considering that at one time the Guild claimed that this case was not only in the best interest of its members, but also "the best interests of our nation." [*See* Complaint, DN 1, Page ID#: 7 para. 20]. Nevertheless, all the Guild says now is that following discussions with the Attorney General "[t]he Guild now believes that it can dismiss this case," all while reserving the right to sue again in the future under different circumstances. [Guild's Rule 41 Motion, DN 52, Page ID#: 723, para. 3]. If the Guild wishes to quit now only so that it can sue later under more favorable conditions ("unforeseen and material change[s] in circumstances," in the Guild's terms), that is simply not enough. *See Dunlap*, 2021 WL 3123914, at *6 (finding plaintiff's "obvious

desire to restart the litigation" as an insufficient explanation for dismissal).

### 4. Existence of a motion for summary judgment.

The fourth and final *Grover* factor favors the Attorney General. At the time the Guild moved to voluntarily dismiss its case, the Attorney General had already filed a Rule 12(c) motion for judgment on the pleadings. As that motion explains, it seeks dismissal with prejudice of *all* the Guild's claims in this case (including the equal protection claim that was never technically added to an amended complaint). [*See* Attorney General's Rule 12(c) Motion, DN 51]. For that reason, the Attorney General's motion should be treated for purposes of the final *Grover* factor as a motion for summary judgment, and this factor, therefore, weighs in favor of the Attorney General. *See Dunlap*, 2021 WL 3123914, at *6 (finding the fourth *Grover* factor weighed in defendant's favor because the summary judgment motion preceded the filing of the Rule 41 motion). *Cf. Malibu Media*, 705 Fed. Appx. at 409 (finding the fourth factor weighed in the plaintiff's favor because the defendant filed its summary judgment motion six days *after* the motion for voluntary dismissal); *Walther v. Florida Tile, Inc.*, 776 Fed. Appx. 310, 313, 316 n. 2 (6th Cir. 2019) (reserving for another day a decision on whether a Rule 12(c) motion (in the case the defendant's motion was one for *partial* judgment) was analogous to a motion for summary judgment for purposes of the *Grover* factors).

Collectively then the *Grover* factors weigh in favor of the Attorney General, and dismissal of this case *with* prejudice is warranted. *Grover*, 33 F.3d at 718. To hold otherwise would be an abuse of discretion. *Id.*

### IV. CONCLUSION

If the Court dismisses the Guild's claims without prejudice, then the Attorney General will suffer plain legal prejudice. The Sixth Circuit's opinion clearly dictates a favorable result to the

13

Attorney General, and dismissing this case without prejudice would be unfair. In addition, on balance, the *Grover* factors weigh in favor of the Attorney General. Therefore, this Court should either outright deny the Guild's motion and rule on the pending motion for judgement on the pleadings or, in the alternative, grant the Guild's motion but dismiss all claims with prejudice.

                                      Respectfully submitted,

                                      */s/ Philip R. Heleringer*
                                      J. Christian Lewis (KY Bar No. 87109)
                                      Philip R. Heleringer (KY Bar No. 96748)
                                      Matthew Cocanougher (KY Bar No. 94292)
                                      *Office of Consumer Protection*
                                      Kentucky Office of the Attorney General
                                      1024 Capital Center Drive, Suite 200
                                      Frankfort, KY 40601
                                      Tel:   (502) 696-5300
                                      christian.lewis@ky.gov
                                      philip.heleringer@ky.gov
                                      matthew.cocanougher@ky.gov
                                      *Counsel for Attorney General Daniel Cameron*

## **CERTIFICATE OF SERVICE**

      I certify that on November 2, 2021, this document was filed with the CM/ECF filing system, which electronically served a copy to all counsel of record.

                                        */s/ Philip R. Heleringer*
                                        *Counsel for Attorney General Daniel Cameron*